# JULY TERM, 1871.

PRESENT—HON. S. A. KINGMAN, CHIEF JUSTICE.
HON. D. M. VALENTINE,     } ASSOCIATE JUSTICES.
HON. D. J. BREWER,        }

BARZILLAI GRAY v. DANIEL ULRICH, *et al.*

1. PRACTICE; *Irregularities; Error.* Irregularities which do not affect substantial rights, and which could be corrected on motion in the court below, will not be considered by the supreme court on error until they have been passed upon by the district court.

2. ——— *Continuances.* It is improper, after a case has been continued, to set aside the continuance and dispose of the case in the absence of one party and on the application and in favor of the other.

3. DEED—*Unacknowledged and Unrecorded.* Neither an imperfect acknowledgment, nor a total want of any acknowledgment, affects the validity of a conveyance. An unacknowledged deed passes title equally with one duly acknowledged and certified. Acknowledgment has reference simply to the proof of execution, and not to the force of the instrument.

4. ——— *After-acquired interest of Grantor.* The statutes of Kansas declare when and to what extent the after-acquired interest of a grantor shall inure to the benefit of his grantee. In this case, under the act of 1859, the after-acquired title of the grantor passed to the grantee to the extent of the interest purported to have been conveyed by such grantor.

5. DEED—*Not to be impeached by subsequent Grantee.* A subsequent grantee cannot ordinarily attack a prior deed of his grantor for fraud or want of consideration. [Following *Carithers v. Weaver,* 7 Kas., 119.]

6. PLEADINGS—*Construction of; Irrelevant and Unnecessary Averments.* While irrelevant and redundant matter appearing in pleadings may be stricken out on motion, allegations in a petition which, though unnecessary, yet so far qualify and restrict the other allegations as to show that the plaintiff's right to relief is barred or destroyed, cannot be rejected on demurrer as surplusage.

7. TRUSTS AND TRUSTEES. A party, who has the *equitable title* to lands at the time such lands are conveyed by the holder of the *legal title,* may question the interest conveyed by such deed for the purpose of establishing a trust. A grantee who purchases with knowledge of the trust takes no greater interest than his grantor had, and will hold the estate as trustee for the equitable owner.

*Error from Lyon District Court.*

DANIEL ULRICH and John Bowen, as executors of the last
will and testament of Jacob Ulrich, deceased, filed their peti-
tion against *Barzillai Gray*, William Miller and Jane Hicks,
for the purpose of setting aside and canceling a certain deed
executed by said Jane Hicks to and in favor of said *Gray* and
said Miller, as grantees, conveying or purporting to convey the
undivided one-fourth interest in 640 acres of land in Lyon
county. *Gray* demurred, alleging that the petition did not state
facts sufficient to constitute a cause of action, and also, that there
was a defect of parties plaintiff. The record contains a jour-
nal entry showing that at the March Term, 1867, on motion
of plaintiffs, and by consent, *the heirs* of said Jacob Ulrich,
(seventeen in number,) were " made parties plaintiff," by name,
and the cause was continued. At the next September Term
the cause was again continued; and afterward, at the same
term, on motion of plaintiffs the order of·continuance was
vacated, and the case was disposed of, as shown by the journal
entry, as follows:

[TITLE.] " And now come the said plaintiffs, by W. P. Mont-
gomery, their attorney, and thereupon, on motion of the said
plaintiffs, it is ordered that the continuance heretofore at this
term of the court entered herein be and the same is hereby set
aside; and thereupon, this cause came on to be heard upon
the petition and evidence of the plaintiffs, whereupon, it
appearing to the satisfaction of the court that the defendants
Barzillai Gray and Jane Hicks have been duly served with
summons, and are in default of answer, and that the defendant
William Miller is a non-resident of the State of Kansas, and
has been duly served with notice of the pendency of this
action by publication, as required by law; and it appearing by
the plaintiffs' petition, and proofs by them submitted, that said
plaintiffs are entitled to the relief prayed for in their petition;
that the said plaintiffs are well seized and entitled to the lands
mentioned in plaintiffs' petition, to-wit:  (*description of land;*)
and it further appearing that an instrument of writing bearing
date Dec. 21, 1860, purporting to convey unto Barzillai Gray
and William Miller, defendants, the right, title and interest of
one of the heirs of John Hicks, to whom the government

patent of said land was issued, to-wit, Jane Hicks, said defend-
ant, was obtained from said Jane Hicks without giving her
therefor any valuable consideration, and was so obtained by
false and fraudulent representations made by said Gray and
Miller to said Jane Hicks; it is therefore ordered that said
instrument be set aside and cancelled, and that said defend-
ants pay the costs of this action," etc.

No answer or demurrer was filed by any of the defendants
after the heirs of Ulrich were made plaintiffs, and none made
to the original petition except the demurrer of defendant *Gray*.
None of the defendants were present when the case was dis-
posed of. The averments of the petition are sufficiently set
forth in the opinion. *Gray* alone brings the case to this court
for review.

*B. Gray*, plaintiff in error, *in pro. per.:*

1. There was no such suit pending in the court below as the
one in which this judgment was rendered. The *title* of the
judgment shows that the original plaintiffs have been omitted,
and that the new parties, which came in by consent, alone
appear as plaintiffs, making the judgment rendered a judgment
in a *different action* from that pending in the court below, and
designated in the petition. The names of the original parties
cannot be struck out by amendment. 27 Ala., 326; 32 id.,
626; 38 id., 135.

There was no amended petition filed in the case, and no alle-
gation that the new parties were the heirs of Jacob Ulrich, or
had or claimed any interest in the lands in controversy. The
fact that the new parties were designated "as heirs" in the
title of the case, on the journal entry, is merely a *descriptio
personarum*, and cannot be construed into an allegation of the
character in which they sue. Essential facts cannot be pleaded
indirectly, or by *inference*. They must be alleged with direct-
ness, and affirmatively and positively. The judgment was
rendered on the petition, (the old petition, of course,) and is not
responsive to the allegations in said petition.

2. The suit below, as brought by the executors of Jacob
Ulrich, could not be maintained by them, as the subject-matter is

the *realty*, and there is nothing in the petition showing that they (the executors) were authorized by will to bring such suit. The real estate goes to the heir, and the personalty alone to the executor or administrator. Nor can the executors and heirs be joined in the suit. 38 Ala., 38; 12 Johns., 185; 1 Chitt. Pl., 62, 64, 65.

3. Had the new parties been properly brought in as plaintiffs, and had an amended petition been filed containing the proper averments, and showing that said new parties were the heirs, that they had an interest in the controversy, and had notice of the filing of such amended petition been given to the defendants, even then said judgment should be reversed

The action is to set aside the deed to Miller and Gray, on the ground that the same was obtained by fraudulent representation on the part of said defendants. It is required in such cases that the *facts* and *circumstances* constituting such fraud and misrepresentation should be *distinctly* and *specifically* set forth in the plaintiff's petition. 24 Ark., 460; 36 Mo., 182; 19 How., 69; 27 Cal., 163; 6 Miss., 311; 2 Scam., 420; 2 Root, 476; 31 Ill., 479; 30 Ind., 342.

4. Objection is made to the acknowledgment of the deed from Jane Hicks to Miller and Gray. It is not unlawful to record a deed, whether acknowledged improperly, or not acknowledged at all. A deed recorded *un*acknowledged, imparts notice to subsequent purchases. 3 Kas., 172.

5. It is also alleged that said deed was without consideration, and invalid in law. As between the parties to the deed and others, except creditors, no consideration need be mentioned in the deed, and it cannot be impeached for want thereof. 35 Ala., 636; 16 Wend., 460; 36 N. H., 86; 29 Me., 410; 6 Paige, 526; 2 Barb. Ch., 232, 267.

By our statute said instrument imports a consideration in law: Comp. L., p. 351, § 6, ch. 38; Gen. Stat., p. 183, § 7 ch. 21.

6. Even had said conveyance been obtained fraudulently, Jacob Ulrich, purchasing more than a year after, with notice of such deed, is not the person, nor in a position, to take

advantage of the fraud. 9 Paige, 145; 5 Johns. Ch., 567. It would not be absolutely void, only *voidable*, and could only be attacked by the original grantor. 2 Pick., 184; 3 Hill, 513; 6 Wis., 645; 1 Hil. on Vend., 333.

Even without notice of such deed, said Ulrich being a vendee, could not, nor could his heirs, maintain this suit. It is a personal right of the vendor, Jane Hicks, and is incapable of sale or transfer. 6 Wis., 645; 13 Mass., 515; 10 Wheat., 368, 392.

" A grantor, after he has parted with his title, can do nothing to prejudice the rights of his grantee." 13 Johns., 107; 10 Paige, 180, 183; 1 Cow. & H. Notes, 655, 657, 662.

Neither Ulrich nor his heirs can maintain this suit, having *no interest* in the subject-matter. They cannot complain of *another's* injuries. They must have a direct interest in the result, and that interest must *appear* upon the face of the petition. (Story Eq. Pl., 260, 261; Mitford Ch. Pr., 154–163.) They complain of fraud practised on Jane Hicks, not upon themselves, and that in a matter where Jane Hicks was solely interested, and in which they (Ulrich and heirs) have no personal interest whatever.

7. It is alleged that at the time of the making of this deed to Miller and Gray by Jane Hicks, the United States had not issued their title to the heirs of John Hicks. It appears from the petition that she had conveyed said lands to Miller and Gray, in December, 1860, and that the land was patented to her March 3, 1861. Whatever title she then acquired inured to the benefit of her former grantee. The instrument she executed to Gray and Miller is described in said petition as " *an instrument* in writing *purporting to convey*." It is also designated as a *deed*. Such a conveyance will carry an after-acquired interest. Comp. Laws 1862, p. 354, § 4; 1 Oregon, 327; 4 Pet., 80; 11 How. 322; 1 Gr. on Ev., § 24.

8. The last allegation in said petition is that before the making of the deed to Miller and Gray, the " original float " by which said lands were entered had been duly sold and assigned to Jacob Ulrich for a valuable consideration, and that

he (Ulrich) had possession and control of said "float," and had selected the lands and entered them at the Land Office, "all of which said defendants well knew when they obtained said conveyance from said Jane Hicks."

There is nothing in said petition that informs us what this "float" is. It is not a thing of which the court can take judicial notice. Is it a title higher than the patent? Was it a right affecting real estate? If so, where did it originate? What was its character? *Whose* was it? Was it assignable? If it was assignable, who assigned it? Was the assignment in writing? On all these essential points the petition gives us no information. But the petition does state that the lands were patented to the heirs of John Hicks; that *Jane* Hicks was one of the heirs. It is not averred in the petition that Jane held this title as *trustee* for Jacob Ulrich, nor for any one else; nor that she had made any contract, deed, or conveyance to Ulrich before her conveyance to Miller and Gray; nor is it even alleged that Miller and Gray held the legal title as trustee for Ulrich, or for any other person. The petition therefore did not state facts sufficient to constitute a cause of action.

When the petition does not state facts sufficient to constitute a cause of action, the judgment should be arrested. 32 Mo., 188; 16 N. H., 551. And what is good ground for arresting a judgment is good ground for *reversing* it. 17 Wis., 416; 1 Chitty Pl., 197; 12 Cush., 475.

A judgment by default, not objected to below, will be reversed on error when the petition shows no substantial cause of action. 33 Ala., 206; 5 Kas., 134.

9. The court erred in not disposing of the demurrer. The judgment recites that said Gray and Jane Hicks had been personally served, but *were in default of answer*, while the record shows that Gray had interposed a demurrer on two grounds. This demurrer was to the original petition, the *only* petition ever filed in said suit, and the petition referred to in the judgment. One of which grounds of demurrer went to the whole petition, and neither of which grounds of demurrer had ever been acted on or passed upon by the court.

Even could it be supposed that the defect of parties was cured, there yet remained the other ground of demurrer, which was to the whole petition unacted upon, and undisposed of. And without disposing of which the court erred in declaring the defendant Gray in default, and rendering judgment against him. 21 Cal., 425; 41 Miss., 92; 1 Blckf., 287; 1 Oregon, 181; 21 Ark., 18; 14 Wis., 188.

The demurrer of Gray still stood to the original petition, notwithstanding new parties were added. 5 Kas., 305.

10. The record shows that at the September Term (1867) of said court, said cause was continued. That subsequently, at the same term, on motion of plaintiffs, and without notice to the defendants, and in their absence, and without their consent, said continuance was set aside and the trial proceeded with, and said judgment rendered; and this was error.

*W. P. Montgomery*, and *Ruggles & Plumb*, for defendants in error:

The only point in this case is: Was error committed in rendering judgment without first disposing of the demurrer? If the petition stated a good cause of action, so that the demurrer ought to have been overruled, if considered, then no error was committed.

When the demurrant fails to call up his demurrer, the court is justified in disregarding it, and in rendering judgment as for want of answer. And no exception appears to the action of the court. 2 Kas., 336. At most, the disregarding the demurrer can only be regarded as overruling it.

We think the petition a good one. It, together with the amendment made by consent of parties, contained an allegation that Jacob Ulrich died siezed and possessed of the realty in question; that the defendants were his heirs at law, that the plaintiff in error claimed an interest in the premises by means of a deed set out in the petition, which deed showed that the interest of the plaintiff in error was adverse to that of the defendants in error, and asking that the deed be set aside, and the defendants in error be decreed to have title in the premises.

This was a good petition to quiet title. (Comp. Laws, 224, § 569.) And in this view we may treat all the allegations of fraud as irrelevant, immaterial, and mere surplussage. Being so, they cannot affect the validity of the petition. The good will not be vitiated by the bad.

But if we treat the petition as one to set aside the deed for fraud, as well as to quiet title, still there is no error in rendering judgment. At most the pleading was indefinite and uncertain. This could be only be taken advantage of by motion, and not by demurrer. 2 Kas., 347; 3 id., 389; 8 Ohio St., 293.

The order of the court, (entered by consent,) making the heirs at law of Ulrich parties plaintiff, did two things: 1st, It conclusively established that the parties named in the order are the heirs at law of Jacob Ulrich, and is a judicial admission of that fact by the plaintiff in error, as the order was made with his consent; and, 2d, It is waiver of all objection on the part of plaintiff in error to the making of the heirs parties, the tiɯe and manner in which it was done, and amounted to a voluntary appearance on the part of plaintiff in error to the new action in which the heirs were parties plaintiff.

The executors still continued parties plaintiff in the action, in the court below after the amendment making the heirs at law parties. The record nowhere shows that they were out of court. The mere omission of the clerk to insert their names in the title of the cause in the journal entry of the judgment, cannot prejudice the case against the defendants in error. Error, in order to be sufficient to reverse the case, must have been to the prejudice of the plaintiff in error. 8 Ohio St., 294; Comp. Laws, p. 146, § 148; p. 219, § 540.

It was not presented and acted on by the court in which the same occurred.

If evidence would have been admitted under the petition, and over objection as to the fraud, the pleading is good for all the purposes of this proceeding, however objectionable it might have been had a motion been interposed in the court below. Even if the allegation of fraud be considered a conclusion of law, still it is the ultimate *fact* to be proved; hence, evidence

would properly be received under it, even though objected to at the time.  8 Ohio St., 296.

Conceding for the sake of the argument, that, as a general rule, no one but the grantor can maintain an action to set aside a deed obtained by fraud, still, upon the rule that a party must not only *have* a good defense to an action, but he *must make* it, we submit the plaintiff in error should not be allowed to make the point in this court for the first time. (6 Kas., 203.) It was neither a defect of jurisdiction as to parties, nor as to subject matter.

The opinion of the court was delivered by

BREWER, J.:  The record discloses manifold irregularities in the proceedings below, the result of which seems to have been that the plaintiff in error was deprived of his rights without his day in court.  Many of these irregularities could have been corrected by motion in the district court.  At any rate we cannot consider them until they have been passed upon by that court.

1. Practice; irregularities; error.

The petition was filed in the name of the executors of Jacob Ulrich deceased as plaintiffs, alleging that said Ulrich died siezed and possessed of certain tracts of land which he had obtained by deed from the heirs of John Hicks; that Gray and Miller had, prior to the date of that deed, obtained by false and fraudulent representations a conveyance from one of the heirs of her interest in said land, and praying that said conveyance be set aside and cancelled.  To this petition a demurrer was filed by Gray upon two grounds, first, that the petition did not state facts sufficient to constitute a cause of action, and second, defect of parties plaintiff.  At the March Term 1867 the heirs of Jacob Ulrich were by consent made parties plaintiff.  The subsequent entries in the case are entitled with the names of the heirs as plaintiffs, omitting the executors.  By consent the case was continued.  At the subsequent term the case was again continued, but afterwards, during that term, and in the absence of plaintiff in error, the continuance was on application of counsel for the heirs of Ulrich, set aside, the

case heard on the petition and proofs by them offered, and a decree entered setting aside the conveyance to Miller and Gray, and vesting the title to the land in the heirs. No notice was taken of the demurrer. The judgment recites that Gray has been duly served with summons, and is in default of answer. It appears then that the petition was filed in the names of the wrong parties plaintiff; that after the making of the new plaintiffs the case was improperly entitled; that Gray was not in default at the time of judgment, and that judgment against him was therefore irregularly entered. Ordinarily too, it is improper after a case has been continued to set aside the continuance and dispose of the case in the absence of one party and on the application and in favor of the other. A record thus scarred is not comely to look upon. However, if these were the only errors we should probably be constrained to let the judgment stand, until at least application had been made to the court in which it was rendered to vacate it.

2. Granting continuances.

We think a more fatal defect is in the petition; that upon its allegations neither the executors nor the heirs were entitled to any relief. The petition shows that the land in controversy was sold and patented by the United States to the heirs of John Hicks deceased; that Jane Hicks was one of those heirs; that on or about Dec. 21st, 1860, said Jane Hicks deeded her interest in the land to Miller and Gray; that on January 9th, 1862, she joined with the other heirs in a deed of the premises to Ulrich. Now, upon these facts it is plain that the deed to Ulrich, so far as Jane Hicks was concerned, carried nothing, as by her deed to Miller and Gray she had parted with all her interest. To avoid this necessary conclusion, and as furnishing grounds for relief, the petition further alleges that the deed to Miller and Gray was imperfectly acknowledged, was without consideration, was obtained by false and fraudulent representations, and was made before the issue of the patent. In regard to the first allegation, neither an imperfect acknowledgment, nor a total want of any acknowledgment affects the validity of a conveyance. An

3. Deed—when not acknowledged and not recorded.

8—8TH KAS.

unacknowledged deed passes title equally with one duly acknowledged and certified. Acknowledgment has reference simply to the proof of execution, not to the force of the instrument. In regard to the last, by the laws of 1859 which were in force at the time, an after-acquired title of the grantor passes to the grantee to the extent of the interest purported to have been conveyed.* In regard to the second and third, while if true they might have given to Jane Hicks the right to have the deed avoided by a decree of a court of equity, yet this right was a personal one and did not pass to the grantee under any subsequent deed. The deed she had made was not void, but only voidable. She might proceed to have it set aside, or elect to affirm it. The petition does not show that she did either.

*4. After-acquired title of grantor.*

*5. Who may attack a prior deed.*

She never having proceeded to set aside the deed, it is good as against Ulrich and his heirs. When Ulrich took his deed from her, he took nothing, not even the right to question any supposed fraud in her prior conveyance. *Gage v. Gage,* 9 Foster, 533; *Crocker v. Bellangee,* 6 Wis., 645.

But it is claimed with great earnestness and ingenuity by counsel, that, as the petition, since the addition of the heirs as plaintiffs, contained an allegation that Jacob Ulrich died seized and possessed of the reality in question, that the plaintiffs were his heirs at law, that the defendants claimed an interest in the premises by means of a deed set out in the petition, which deed showed that the interest of the defendants was adverse to that of the plaintiffs, and asking that the deed be set aside and the plaintiffs decreed to have title in the premises, it was a good petition to quiet title, and the demurrer ought to have

---

* THE provision referred to is § 4, ch. 41, Comp. Laws of 1862 as follows: "SEC. 4. Where a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor, to the extent of that which the deed purports to convey, inures to the benefit of the grantee."

This provision was somewhat changed in the revision of 1868. Section 5, ch. 22, Gen. Stat. 1868 is as follows: "SEC. 5. Where a grantor, by the terms of his deed, undertakes to convey to the grantee an indefeasible estate in fee simple absolute, and shall not, at the time of such conveyance, have the legal title to the estate sought to be conveyed, but shall afterwards acquire it, the legal estate subsequently acquired by him shall immediately pass to the grantee; and such conveyance shall be as effective as though such legal estate had been in the grantor at the time of the conveyance."

been overruled, and was properly disregarded. In other words, we may reject a large portion of the petition as surplusage and still find enough to make a good petition for some relief.

**6. Redundant and irrelevant matter.** Redundant and irrelevant matter frequently appears in pleadings. The code provides for striking it out on motion. So, if it may be stricken out on motion, it may be disregarded on demurrer. This is correct, except where the allegations proposed to be disregarded so far qualify and restrict the remainder of the petition that if true they show the plaintiff is not entitled to relief, then they may not be rejected as surplusage. The defendant is not called upon to make any defense when the plaintiff's petition on its face shows that his claim for relief is unfounded. To illustrate: An action is brought on an account. The petition is complete, but does not allege when the account was created. A demurrer will be overruled. *Buckner v. Clark*, 1 Kas., 303. Suppose it alleges that the account was created five years before suit. A demurrer will be sustained. *Zane v. Zane*, 5 Kas., 134. The allegation of "time" cannot be rejected as surplusage. Its omission does not vitiate the pleading. Its presence qualifies and restricts the other averments, so that the whole petition shows that the claim is barred. This principle applies to the present case. If there had been only a general allegation of title and possession, the petition might have been considered sufficient as one to quiet title; but inasmuch as it goes farther, and shows how both plaintiffs' and defendants' titles accrued, and upon that showing defendants' title is the better, the demurrer should have been sustained, and there was error in proceeding to judgment, disregarding the demurrer.

Before passing from the case there is another point which requires notice. An attempt is made to show that Ulrich had the equitable title to the land before the deed to Gray and **7. Trusts and trustees.** Miller, and that they took their conveyance with knowledge of this equity. Of course, if Ulrich had the full equitable title, and Jane Hicks acquired simply the naked legal title as trustee for him, and Gray and Miller obtained their conveyance with knowledge of this equity,

Ulrich or his heirs can question the good faith of this conveyance. Or rather, it does not make any difference whether it was in good faith or not, for Gray and Miller would take only what Jane Hicks had, and would hold as trustees for the heirs. But the petition fails to show how and from whom Ulrich obtained the float, how it happened that the land was sold and patented to the heirs of John Hicks, and what interest the grantees in the patent actually had. Until these facts are disclosed we cannot say that the petition shows such an equitable interest in Ulrich in the premises prior to the patent as will enable his heirs to question the good faith of a deed from Jane Hicks prior to her deed to Ulrich.

The judgment must be reversed, and the case remanded with instructions to proceed in accordance with the views expressed in this opinion. Miller and Hicks not complaining of the judgment below, of course it remains as against them unaffected by this reversal.

All the Justices concurring.