ANNA G. M. MENGER et al. v. VIRGINIA RIDLEY CARRUTHERS et al.

No. 94.

1. CONFISCATED REALTY—*Life-Estate*. The estate forfeited by proceedings to judgment under the confiscation act of congress of July 17, 1862, and the joint resolution of the same date, is the life-estate of the offender, the fee remaining in him after the confiscation, but without power of alienation until his disability is removed.

2. ——— *Invalid Quitclaim Deed*. Where the life-estate of an offender has been duly confiscated, and thereafter, but prior to removal of his disability, he executes a quitclaim deed to such real estate, such deed will be ineffectual to transfer the fee to the grantee.

3. —,——— *Effect of Pardon of Offender*. While a pardon of an offender restores him to the control over his estate which had not been forfeited, with full power of alienation, such pardon will not operate to give force or validity to a quitclaim deed previously executed by him, nor prevent his heirs from inheriting the fee upon his death.

4. TITLE—*Subsequently Acquired—Invalid Tax Deed*. Where M., whose only title to real estate is based upon a tax deed which is void upon its face, executes in favor of S. a warranty deed to said real estate, and thereafter procures, under a quitclaim deed, an outstanding life-estate therein, such after-acquired interest inures to the benefit of S., and where, after these deeds have all been duly recorded in the office of the register of deeds of the proper county, S., by quitclaim deed, conveys the said real estate to C., who goes into immediate possession of the premises under said deed, such life-estate becomes at once vested in C., and he cannot, during the continuance of such estate, acquire an adverse

title to the real estate as against the owners of the reversion by purchasing the same at a sale thereof made for delinquent taxes which it was his duty to pay.

MEMORANDUM.—Error from Douglas district court; A. W. BENSON, judge. Action in ejectment by Virginia Ridley Carruthers and others against Anna G. M. Menger and C. A. Menger. Judgment for plaintiffs. Defendants bring the case to this court. Affirmed. The opinion herein, filed May 7, 1896, states the material facts.

*Alford & Savage*, for plaintiffs in error.
*Riggs & Nevison*, for defendants in error.

The opinion of the court was delivered by

CLARK, J. : This is an action brought in the district court of Douglas county to recover posession of lot No. 50, Connecticut street, in the city of Lawrence. The plaintiffs are the children and heirs at law of one Jerome S. Ridley, deceased, and, as such, claim to have inherited the fee in said real estate. The defendants claim to own the fee under a title acquired through sales of the land for taxes regularly assessed against it, and also by adverse posession for the statutory period. The trial court made special findings of fact and conclusions of law, and rendered judgment in favor of the plaintiffs for possession of the real estate in controversy upon payment to the defendants of the sum of $56.98, the amount required to redeem the premises from certain tax sales made prior to the date the defendants went into possession. The defendants, as plaintiffs in error, are seeking a reversal of this judgment.

From the findings of fact, it appears that, on December 25, 1856, the title of said lot became vested in

the said Jerome S. Ridley; that on November 14, 1858, he mortgaged the same and other real estate in Kansas to one Broomfield Ridley to secure the payment of $3,500, the mortgage containing the provision that, if the money was not paid in 12 months, the mortgagee might proceed to sell the real estate, and apply the proceeds to the payment of the sum secured; that after the 17th day of July, 1862, Jerome S. Ridley gave aid and comfort to, and was engaged in the then existing rebellion against the government of the United States; that on the 28th day of July, 1864, proceedings were instituted looking to the confiscation of said real estate under the act of congress of July 17, 1862, entitled "An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes," and, in pursuance thereof, the said real estate was, by the order and decree of the district court of the United States for Kansas, condemned and declared forfeited to the United States, and the said lot No. 50 was thereafter, and on September 17, 1864, sold by virtue of said decree to one J. S. Emery, and on December 12, following, a deed was duly executed conveying the said premises to the purchaser. Similar proceedings were at the same time had with reference to the mortgage deed to Broomfield Ridley, resulting in a sale thereof on September 17, 1864, to one Hawkins Taylor. On June 22, 1867, Broomfield Ridley and wife and Jerome S. Ridley conveyed said real estate to James L. Ridley by a quitclaim deed, which purported to

"transfer and convey to James Lucas Ridley all the right, title and claim we or either of us had in and to any and every parcel of land situated in the town of Lawrence, Douglas county, Kansas. This is intended

to embrace particularly every town lot owned at any time by Jerome S. Ridley which the records in the city of Lawrence show he possessed, reference being had thereto for the numbers and boundaries ; and I, Broomfield Ridley, aforesaid, for the above considerations, do hereby release and set over to said James Ridley all the right, title and claim I have or ever have had to any property *not* situated in the city of Lawrence aforesaid, and especially does he *assign* and *set over* to James L. Ridley a certain mortgage executed by J. S. Ridley to Broomfield Ridley on certain described lots in the city of Lawrence in the month of ——, 1857, but this conveyance is to be considered a quitclaim only and received as such, warranting or guaranteeing nothing by either Jerome S. or Broomfield Ridley, and is intended to convey all interests owned by either of them in and to every town lot or parcel of land in the city of Lawrence, or in the county of Douglas, and state of Kansas. Particular reference is made to the record in the office at Lawrence, and embraces the following lots.'' (Here follows a description of real estate, including lot 50, Connecticut street, in Lawrence.)

On December 9, 1862, a tax deed to this lot was executed by the city of Lawrence to Catherine M. Lord, which was recorded on the following day, and whatever interest Lord acquired under her deed became vested in Jacob Moak by quitclaim deed on May 2, 1865. On July 1, thereafter, Moak conveyed the premises by warranty deed to Joseph T. Sibley. On June 10, 1864, another tax deed to the same lot was executed by Douglas county to W. S. McCurdy, and, on January 22, 1866, he conveyed the lot by quitclaim deed to Moak. Both of these tax deeds were void upon their face. On July 12, 1865, Emery, the owner of the confiscated title, conveyed the premises by quitclaim deed to Moak. The deed from Moak to Sibley was recorded August 27, 1866, and the deeds

conveying the tax title and the confiscated title to
Moak were recorded August 28, 1866, and on the fol-
lowing day Sibley, by quitclaim deed, conveyed the
lot to C. A. Menger, one of the plaintiffs in error.
Jerome S. Ridley died intestate April 6, 1886, and on
December 21, 1888, the plaintiffs below demanded of
the defendants possession of the property, which was
refused. Prior to the last-named date no one had
ever questioned or disputed the defendants' title, or
disturbed their possession, and the defendant C. A.
Menger, the grantee of Sibley, had no actual knowl-
edge of the conveyance to Moak until 1881, but the
evidence failed to show whether or not Sibley ever
had actual knowledge of such conveyance. Menger
went into possession of the property under the deed
from Sibley on August 29, 1866, and subsequently ac-
quired two tax deeds of the same lot. The court
found that the first two tax deeds above mentioned
were void as conveyances, but that they were liens in
favor of the tax-title purchasers and their vendees,
and that these liens and the estate created by the con-
fiscation proceedings united for the first time in C. A.
Menger on August 29, 1866, and it was the amount
of these liens that the court required the plaintiffs to
satisfy before they could obtain possession of the
premises.

The plaintiffs in error contend : (1) That the at-
tempted confiscation of said lot was void for want of
jurisdiction over Jerome S. Ridley ; (2) that, even if
the confiscation proceedings operated to transfer the
life-estate to Emery, the subsequent conveyance from
Emery to Moak, after the latter had, by warranty
deed, conveyed the lot to Sibley, did not preclude Sib-
ley or his grantee from acquiring an adverse title as
against the plaintiffs ; (3) that the plaintiffs below

have no interest in the real estate in controversy because of the conveyance by Jerome S. Ridley and Broomfield Ridley and wife to James L. Ridley on June 27, 1867 ; (4) that if the plaintiffs were entitled to recover possession, it should have been conditioned upon the payment of the full amount of the tax lien, with interest thereon to the date of judgment, instead of to August 29, 1866, the date that the court found the title under the confiscation proceedings and the first two tax deeds above mentioned became united in C. A. Menger.

In support of the first proposition, the plaintiffs in error contend that, as the marshal received the process and monition of the court on May 14, 1864, and was required by law to give two weeks' notice by publication to all persons interested therein to answer on the 28th of May, 1864, and as the trial court found that the notice was published in the Lawrence *Weekly Tribune*, and that in 1864, and in the month of May of that year, the publication day of that paper was on Thursday of each week, and that as May 14, 1864, came on Saturday, the first publication of the paper after the order was made must have been on May 19, and, if so, that the notice could not have been published for more than nine days, and that the court therefore acquired no jurisdiction to enter the decree of forfeiture. But we do not think that these findings necessarily impeach the marshal's return that the notice was published for 14 days, especially as the court in which the confiscation proceedings were had found that due notice had been given. It will also be observed that the trial court did not find that this paper was not in fact published on May 14. It may be that, notwithstanding Thursday was the day upon which the paper was usually published, the issue of that

particular week was not put into circulation until
Saturday, the 14th.   The notice would run from the
date of actual publication, irrespective of the date the
latter might bear.   We therefore hold that the pro-
ceedings had, resulting in the confiscation of the real
estate, were regular, and in compliance with the re-
quirements of law, and that under those proceedings
the life-estate of Jerome S. Ridley in lot No. 50 be-
came vested in J. S. Emery.   Whether the proceed-
ings that were had to confiscate the Broomfield Ridley
mortgage were so defective as to amount to a nullity,
we do not deem it necessary to decide.   While the lien
of that mortgage was not affected in any way by the
proceedings had to confiscate the real estate of Jerome
S. Ridley, under our construction of the instrument of
conveyance of June 22, 1867, above recited, in so far
as it relates to Broomfield Ridley's interest in this
particular lot, it amounted only to an attempted as-
signment or transfer of the mortgage to James L. Rid-
ley, instead of a sale of the real estate under the power
given in the mortgage ; and as neither the mortgagee
nor any one claiming under him is before this court,
and as the evidence is not preserved in the record, it
would be presumed, if necessary to uphold the judg-
ment of the trial court, that the evidence showed
that the lien created by that mortgage had been dis-
charged.   We are also of the opinion that that in-
strument did not operate to transfer the fee to James
L. Ridley.   While, under the recent decisions of the
United States supreme court, we think that the estate
forfeited by the proceedings under the confiscation
act and the joint resolution of congress of the same
date was the life-estate of the offender, the fee remain-
ing in him after the confiscation, yet he had no power
of alienating any interest in the real estate remaining

6—KAN. APP.

in him until his disability was removed by the am-
nesty and pardon proclamation of the president,
December 25, 1868. (*Railroad Co. v. Bosworth*, 133
U. S. 92 ; *Jenkins v. Collard*, 145 id. 546 ; *United States
v. Dunnington*, 146 id. 338.) In the case of *Jenkins
v. Collard*, supra, Jenkins, the offender, had, prior
to the issuance of the proclamation of pardon and
amnesty, conveyed the real estate confiscated, by
warranty deed, and the court held, that while under
the ruling in *Wallach v. Van Ryswick*, 92 U. S. 202, Jen-
kins had, at the date of his conveyance, no power of
alienating the reversion or remainder of the estate,
yet he was at liberty to add to his deed the ordinary
covenants of seizin and warranty, and that the same
legal operation upon future-acquired interests must
be given to them as when accompanying conveyances
of parties whose property had never been subjected to
confiscation proceedings, and that, as his deed was
accompanied with a covenant of seizin on his part,
and that he would warrant and defend the title against
the lawful claims of all persons whomsoever, that
warranty estopped him and all persons claiming under
him from asserting title to the premises against the
grantee, and his heirs and assigns, or conveying it to
any other party ; and that, when subsequently, under
the general amnesty and pardon proclamation, any
disability that had previously rested upon him against
disposing of the remaining estate which had not been
confiscated was removed, he stood, with reference to
that estate, precisely as if no confiscation proceedings
had ever been had ; and that the amnesty and par-
don, in removing the disability resting upon him re-
specting that estate, inured equally in its benefits to
his grantee.

In *Railroad Co. v. Bosworth*, supra, it was held that

a condemnation under the confiscation act and a sale under the decree left the remainder, after the expiration of the confiscated life-estate, vested in the offender, so that he could dispose of it after receiving a full pardon of the president. But in *Chaffraix v. Shiff,* 92 U. S. 214, an action was brought for specific performance of contract for the purchase of real estate. The contract expressly stipulated that the purchaser would not be bound to accept the sale if the title were not good and valid. The title offered was that of a purchaser at a confiscation sale, to whom, after the sale, Surget, the person as whose property the land was confiscated, had released *without warranty,* and it was held, "that such a title is not a complete and valid one; that it is ineffective beyond the life of Surget, and that his release did not enlarge it."

After a careful examination of the various decisions of the supreme court of the United States construing the act of congress of July 17, 1862, we have arrived at the conclusion that, after the life-estate in the real estate in controversy had been condemned by the confiscation proceedings and sold, there remained in Jerome S. Ridley a mere naked title to the fee, but without power of alienation until his disability was removed by the general amnesty and pardon proclamation of the president, December 25, 1868; that the condemnation and sale of the life-estate therein, and consequent disability to dispose of the fee, were in the nature of a punishment meted out to Ridley for the offense committed by him; that the amnesty and pardon proclamation operated to remove these disabilities and to relieve him from the consequences, and he thereupon became restored to all his civil rights, and to the control of so much of his property as had not become vested in other persons; and he might there-

after, had he so desired, have alienated the estate remaining after the expiration of the confiscated life estate, but that the pardon granted subsequently to the execution of the quitclaim deed did not of itself operate to give vitality to that instrument, or to enlarge the estate thereby conveyed; that his grantee acquired no higher rights than those enjoyed by him at the time of the conveyance, and, as no attempt was made by Ridley to dispose of the fee after his disabilities were removed, the entire estate, upon his death, descended to his heirs.

Under the deed from Emery to Moak, the latter acquired the confiscated life-estate, which, under section 4, chapter 41, Compiled Laws of 1862, inured to the benefit of Sibley, and became vested in him. (*Gray v. Ulrich*, 8 Kan. 112.) Prior to the execution of that deed, the only title which Sibley had to this lot was based upon a tax deed which was void upon its face. These several deeds of conveyance were all of record at the date of the execution of the quitclaim deed from Sibley to Menger, and the latter conveyance, under the statute then in force, passed all the interest which Sibley had in the premises to his grantee. Menger went into possession under this deed, which, as we have seen, conveyed the life-estate, on August 29, 1866, and he was bound in law during the continuance of that estate to pay the taxes subsequently levied against the property, and was thereby estopped from purchasing at a tax sale and acquiring an adverse title, to the prejudice of the reversioner. The issuance of the subsequent tax deeds based upon the assessments made while he was in possession of the property and the holder of the life-estate operated as an extinguishment of the taxes—a mere payment thereof. We think the trial court properly held that

the tax liens and the estate created by the confiscation proceedings became united for the first time on August 29, 1866, in the plaintiff in error C. A. Menger, and that the amount of the recovery to which he was entitled was properly found by the court to be the amount required to redeem on that date from those sales.

It follows from what has been said that the judgment should be affirmed.

All the Judges concurring.