### No. 25,311.

### S. H. JAMISON, *Appellee,* v. A. L. FLANNER, Sheriff of Johnson County, *Appellant.*

#### SYLLABUS BY THE COURT.

1. HABEAS CORPUS—*Governor Has No Authority to Grant Commutation of Sentences Without Notice.* Construing R. S. 62-2216 and R. S. 62-2220, it is *held,* the latter does not confer upon the governor authority to grant commutations of sentences without notice.

2. SAME—*Duty of Keeper of Prison on Presentation of a Pardon to Him by a Prisoner.* The keeper of a jail or prison to whom a pardon is presented by a prisoner is justified in declining to honor it if any question suggests itself or is raised as to the authority of the pardoning official to issue it, or as to its interpretation, or as to whether conditions named therein have been complied with.

3. SAME—*Court May Inquire into the Authority of the Pardoning Officer to Issue a Pardon.* A court will not inquire into the motive which prompted the pardoning officer to grant a pardon, but will inquire into the authority of the pardoning officer to issue the pardon in question and will interpret and construe it.

4. SAME—*Passing Upon Pardon by Court—Prosecuting Attorney May Appear and Controvert It—Court Must Pass Upon Its Validity.* When a pardon is called to the attention of a court for its ruling thereon, whether in a habeas corpus proceeding or in any other proceeding or cause, it may be controverted by the prosecuting attorney, and must be expounded by the court.

5. SAME—*Purpose of Pardon or Commutation of Sentence.* The granting of a pardon is an act of grace bestowed by the government through its duly authorized officers or department, and is designed to relieve an individual from the unforeseen injustice, because of extraordinary facts and circumstances peculiar to his case, of applying to him the punishment provided in a general statute which under ordinary circumstances is just and beneficial.

6. SAME—*Pardoning Power is a Power of Government Inherent in the People —Neither Naturally Nor Necessarily an Executive Power.* The pardoning power is neither naturally nor necessarily an executive power. It is a power of government inherent in the people, who by constitutional provision may vest it in whole or in part in any official they choose.

7. SAME—*Constitutional Authority of the Governor to Exercise the Pardoning Power.* Our constitution provides (art. 1, § 7) : "The pardoning power shall be vested in the governor, under regulations and restrictions prescribed by law." *Held,* this includes the power to grant commutations of sentences, to

Jamison v. Flanner, *Sheriff.*

grant pardons and commutations with or without conditions, and to remit fines and forfeitures. *And further held,* (a) the legislature may make such regulations and restrictions upon the pardoning power of the governor as it deems best; (b) a pardon or commutation of sentence issued by the governor without compliance with the regulations and restrictions prescribed by law is void.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed July 10, 1924. Reversed.

*C. B. Griffith,* attorney-general, *C. W. Gorsuch,* county attorney, and *S. T. Seaton,* of Olathe, for the appellant.

*C. B. Little, F. D. Hedrick, C. L. Randall,* and *S. D. Scott,* all of Olathe, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a habeas corpus proceeding to test the validity and effect of a commutation of sentence issued by the governor in a criminal case. There was judgment for the petitioner, and the respondent has appealed.

In a criminal action pending against him in the district court of Johnson county, in which he was charged with the unlawful possession of intoxicating liquor, S. H. Jamison entered a plea of guilty and was sentenced to pay a fine of $100 and the costs of the prosecution, and to be confined in the county jail thirty days and until the fine and costs were paid, and a commitment for him was duly issued to the sheriff. The governor commuted his sentence by issuing the following charter of conditional commutation:

"*To All to Whom These Presents Shall Come, Greeting:*

"WHEREAS, S. H. Jamison was convicted on the 7th day of May, 1923, in the district court of the county of Johnson, of the crime of violation of prohibitory law, and sentenced to the county jail for the term of thirty days, $100 fine;

"AND WHEREAS, The said S. H. Jamison, by petition duly signed, has made application for commutation of sentence, and satisfactory reasons appearing to me:

"Now, therefore, by virtue of authority vested in me by the laws of this state, I do commute the said sentence by reducing the term thereof to one day and payment of fine and costs, and that the said S. H. Jamison refrain from further violation of the law.

"IN TESTIMONY WHEREOF, I have hereunto subscribed my name and caused to be affixed the great seal of the state.

"Done at Topeka, this 21st day of May, A. D. 1923.

"JONATHAN M. DAVIS.

"(Seal.)    By the Governor:

"FRANK J. RYAN, *Secretary of State.*

"By E. A. CORNELL, *Asst. Secretary of State.*"

40—116 KAN.

Jamison paid the fine and costs, served one day in jail, then presented his commutation to the sheriff and demanded his release. The sheriff declined to release him. He then filed in the district court his petition for writ of habeas corpus, naming the sheriff as respondent, alleging the above facts and attaching a copy of the governor's commutation. The sheriff filed a return in which he set out that he was holding the petitioner under the judgment of the court and the commitment issued to him, and he attacked the governor's commutation as having been issued without jurisdiction, and alleged that it was void for the reason, among others, that no notice of the application therefor was given to the trial judge or to the county attorney, and that no notice thereof was published for thirty days in the official county paper as required by law. At the hearing it was admitted that the petitioner had paid the fine and costs and that he had served one day in the county jail. It was further admitted that no notice of the application for commutation or pardon had been given the district judge or county attorney, and that no notice had been published as required by R. S. 62-2216. The court rendered judgment granting the writ and discharging the petitioner, and the respondent has appealed.

The questions presented call for the construction of the following constitutional and statutory provisions relating to pardons and commutations:

"The pardoning power shall be .vested in the governor, under regulations and restrictions prescribed by law." (Const., art. 1, § 7.)

"That the governor may pardon, *parole or commute the sentence of* any person convicted in any court in this state of any offense against any law thereof, and upon such terms and conditions as he may prescribe in the pardon, *parole or commutation of sentence,* but no such pardon, *parole or commutation of sentence* shall be granted *except upon notice to the trial judge and prosecuting attorney of the county in which the conviction was had, nor* until after notice shall have first been given for thirty days of such application for a pardon, parole or commutation of sentence by publishing such notice in the official county paper of such county. The notice so printed shall state the name of the applicant, the time and place when and where the application will be made, and the offense of which the applicant was convicted. That upon the granting of a pardon, parole or commutation of sentence, a certified copy of such pardon, parole or commutation of sentence shall be sent to the clerk of the district court of the county in which the conviction was had, who shall make a record thereof in the proceedings of the case in which the conviction was had." (R. S. 62-2216.)

"The governor may, when he deems it proper and advisable, commute a sentence in any criminal case by reducing the penalty as follows: First, if in

a capital case, to imprisonment for life, or for a term not less than ten years at hard labor; second, if the sentence of the court be for imprisonment, with or without hard labor, by reducing the duration thereof;.third, if a fine, by reducing the amount thereof; fourth, if a fine and imprisonment, by reducing either or both." (R. S. 62-2220.)

As originally enacted (Laws 1864, ch. 89; Gen. Stat. 1868, ch. 73), R. S. 62-2216 did not contain the italicized words as printed above. These were added (and some changes made, not here material), by chapter 273 of the Laws of 1921. Prior to this amendment the statute made no specific mention of notice of applications for com-. mutations. The petitioner contends that since R. S. 62-2220, which when enacted permitted commutations by the governor "when he deems it proper and advisable," was not amended in 1921, there are now two methods of procedure in granting commutations: (*a*) when applied for by the person convicted there must be notice (R. S. 62-2216) ; and (*b*) when the governor "deems it proper and advisable," acting independently of the application of the petitioner, he may commute the sentence without notice. (R. S. 62-2220.) We think the statute is not open to that interpretation. As the sections now stand the effect of R. S. 62-2220 is to place certain restrictions upon commutations, but this section does not authorize the granting of commutations without the notice required by R. S. 62-2216. Even if petitioner's theory is correct it would avail him nothing in this proceeding, for the commutation shows upon its face that it was granted upon his application, and on his interpretation of the statute it is necessary for him to give the statutory notice, which it is admitted was not done.

It is contended by the petitioner that since the commutation here in question was valid on its, face, bearing the signature of the governor and the great seal of the state, it was the duty of the sheriff to honor it without. question and to release the petitioner. A keeper of a jail or prison is not a court and he has no authority to pass upon the power of a pardoning official to issue a pardon or commutation, nor to construe it nor to take evidence and determine whether conditions named therein have been complied with. These questions are to be passed upon by courts, not by keepers of jails and prisons. (*Commonwealth v. Shisler*, 2 Phila. 92; *Howe, Sheriff, v. The State*, 2 Bay [S. C.] 565.) If the pardon or commutation is presented directly to the keeper of the jail or prison, and he acts as the court would have directed him to act had he presented it to the

court, no harm is done; but if he acts otherwise he becomes liable either to the prisoner or to the state, as the case may be.

It is contended by petitioner that a charter of pardon is like a deed, that it may be set aside for fraud in a suit in equity brought for that purpose, but when it is regular on its face it cannot be attacked collaterally in a habeas corpus proceeding, and *In re Edymoin*, 8 How. Pract. (N. Y.) 478, which so decides, is cited. A pardon is like a deed in that it must be delivered and accepted by the grantee to be binding. (*United States v. Wilson*, 32 U. S. 150.) The case of *In re Edymoin*, supra, was criticized and its authority specifically denied in *People, ex rel. Pickard, v. Sheriff*, 11 N. Y. Civ. Pro. Rep. 172, where it was said: "The case of Edymoin (8 How. Pr. 483) is a county court decision way back in 1852, and follows no authority," and it was there held; that the judge before whom the writ of habeas corpus is returnable may go beyond the warrant and writ of the committing magistrate and inquire as to the validity of the process, and that he has "all the powers exercised at common law by the king's bench in England, and the supreme court of this state."

In *People v. Hayes*, 143 N. Y. S. 325, Governor Sulzer, after articles of impeachment had been presented against him, granted a pardon regular on its face to one Robin, a prisoner in the penitentiary. The warden declined to honor it and Robin brought habeas corpus proceedings for his release. The court went back of the face of the pardon and inquired into the authority of the officer to issue it, and held that when impeachment articles were filed against the governor the lieutenant governor automatically became acting governor, and that Governor Sulzer had no authority to issue the pardon.

The case of *In re Edymoin*, supra, has never been followed in New York, and we decline to follow it. On this point the petitioner also cites *Territory of Oklahoma v. Richardson*, 9 Okla. 579, where it was said that a pardon stands on the same plane with the government's patent to land, with its patent for an invention, with its incorporation of a company, or with a record of a judgment; that while fraud may vitiate them and an action may be brought setting aside a deed, patent, incorporation or judgment for fraud, it will only be done in a direct proceeding for that purpose. No authorities are cited in support of the doctrine stated in the opinion, though in some aspects perhaps the comparison is proper. We note this was

Jamison v. Flanner, *Sheriff.*

an opinion of the territorial court. In two later cases arising under the constitution of the state, *Ex parte Crump*, 10 Okla. Cr. 143, and *Stewart v. State*, 11 Okla. Cr. 400, it was held that in a habeas corpus proceeding the court has power to inquire into the validity of a pardon under which a prisoner seeks to be discharged from the penitentiary. This is in accord with the holdings of the courts generally. So if *Territory of Oklahoma v. Richardson*, supra, is construed as holding differently, we feel justified in declining to follow it.

Our research has disclosed but one case, *Rathbun v. Baumel*, 196 Iowa 1233, in which a suit in equity was brought to set aside a pardon on the ground of fraud. In that case Rathbun had been convicted of a felony and sentenced to prison and the governor granted to him a pardon. The county attorney brought a suit on his relation, in the name of the state, in the district court to set aside the pardon on the ground of fraud. The attorney-general was given leave to intervene, and also prayed that the pardon be set aside for the same reason. Rathbun instituted habeas corpus proceedings. The suit in equity and the habeas corpus case were tried together. In the equity suit the court found for the plaintiff and set aside the pardon. In the habeas corpus case a return had been made charging fraud in the procurement of the pardon. In that case the court held against the petitioner and denied the writ. No appeal was taken from either of these judgments. Later Rathbun brought another habeas corpus proceeding. The return alleged the invalidity of the pardon and also the former proceedings in the equity suit and in the habeas corpus case, and this is the case that is reported. The court held that the equity suit would lie to set aside the pardon, but also held that the question of the validity of the pardon was raised in the habeas corpus and there decided. In that case the petitioner contended that all the court could do would be to examine the pardon, ascertain if it bore the signature of the governor, the great seal of the state, and was otherwise regular on its face. The court denied that claim and said: "A court can protect its own judgments by an inquiry into the question as to whether or not the instrument that vacates them is itself valid." In *Knapp v. Thomas*, 39 Oh. St. 377, in a very able opinion, though by a divided court, it was held that a pardon could not be set aside for fraud in a habeas corpus case, though that result could be reached in a suit brought for that purpose.

The correct rule, gathered from the authorities, may be thus stated: The court does not take judicial notice of individual pardons. When one relies upon a pardon issued to him individually to relieve him from prison or for any other purpose he must in some way and in some proceeding call it to the attention of the court. The manner and the nature of the proceeding in which it is called to the attention of the court are not material. When the court's attention is called to the pardon it will not inquire into the motives which prompted the pardoning official to issue the pardon, for to do so would be to usurp the pardoning power; but the court will inquire into the authority of the pardoning official to issue the particular pardon in question; will inquire as to whether fraud was practiced upon the pardoning official, if that be suggested, though on that point much care must be exercised (Wharton, Cr. Proc. vol. 2, § 1469), and there is some division of authority on how that question may be raised (*Dominick v. Bowdoin,* 44 Ga. 375; *State v. McIntire,* 46 N. C. 1; *Ex parte Rosson,* 24 Tex. App. 226; *Commonwealth v. Halloway,* 44 Pa. 210; *Knapp v. Thomas,* 39 Ohio St. 392; *Rathbun v. Baumel,* 196 Iowa 1233) ; will examine the pardon to see that it is valid upon its face, and if it is conditional will inquire as to whether or not the conditions have been complied with. Questions of this character have many times been considered in habeas corpus cases (*Ex parte Norris,* 8 S. C. 408; *In re Moses DePuy, on Habeas Corpus,* 3 Benedict 307; *In re Monroe,* 46 Fed. 52; *Ex parte Powell,* 73 Ala. 517; *Laird v. Sims,* 16 Ariz. 521; *Amour Hunt, Ex parte,* 10 Ark. 284; *Ex parte Marks,* 64 Cal. 29; *Dominick v. Bowdoin,* 44 Ga. 357; *In re Prout,* 12 Idaho 494; *Ex parte Birch,* 8 Ill. 134; *In re C. H. Charles and Louis Howard, Petitioners,* 115 Kan. 323, 222 Pac. 606; *Ex parte Bugg,* 163 Mo. App. 44; *Ex parte Janes, Habeas Corpus,* 1 Nev. 319; *Ex parte Shelor,* 33 Nev. 361; *Ex parte Bustillos,* 26 N. M. 450; *Ex parte Hawkins,* 10 Okla. Cr. 396; *Commonwealth v. Halloway,* 44 Pa. 210; *Ex parte Rosson,* 24 Tex. App. 226) ; in a suit on a forfeited recognizance (*Haley et al. v. Clark,* 26 Ala. 439; *The State v. Leak,* 5 Ind. 359; *State, ex rel., v. Renick,* 157 Mo. 292; *Commonwealth v. Denniston,* 9 Watts 142; *Commonwealth v. Kelly,* 9 Phila. 586) ; in determining the competency of a witness who had been convicted of a felony and pardoned (*Boyd v. United States,* 142 U. S. 450; *United States v. Burdick,* 211 U. S. 492; *Yarborough v. The State,* 41 Ala. 405; *Singleton v. The State of Florida,* 38 Fla. 297; *Robertson v. Woodfork,*

155 Ky. 206; *State of Louisiana v. Baptiste and Martini,* 26 La. Ann. 134; *State of Nevada v. Foley,* 15 Nev. 64; *Hester v. Commonwealth,* 85 Pa. 139; *Evans v. The State,* 66 Tenn. 12) ; or of a juror (*Puryear v. The Commonwealth,* 83 Va. 51) ; in quo warranto proceedings where an officer had been convicted of a felony which forfeited his office and was later pardoned (*State v. Carson,* 27 Ark. 469; *State, ex rel., v. Parks,* 122 Tenn. 230) ; in mandamus proceedings to compel the issuance of an execution or a judgment in a criminal case (*State, ex rel. District Attorney, v. Judge,* 48 La. Ann. 109; *Spafford v. Benzie Circuit Judge,* 136 Mich. 25) ; in cases involving the penalty under habitual-criminal statutes where a pardon had been issued for the first offense (*Tucker v. State,* 14 Okla. Cr. 54; *Edwards v. The Commonwealth,* 78 Va. 39; *Henderson v. State,* 55 Fla. 36; *Mount v. Commonwealth,* 63 Ky. 93; *People v. M'Intyre,* 163 N. Y. S. 528) ; in a suit for divorce where the conviction of a felony is made a ground for divorce and the spouse had been convicted of a felony and pardoned (*Young v. Young,* 61 Tex. 191) ; in disbarment proceedings of an attorney (*Ex parte Garland,* 71 U. S. 333; *Matter of Emmons,* 29 Cal. App. 121; *In re Brown,* 4 Colo. 438; *Penobscot Bar v. Kimball,* 64 Me. 140; *In re Sutton,* 50 Mont. 88) ; and in contested election cases or actions determining the right to vote (*Jones v. Board of Registrars,* 56 Miss. 766; *Davies v. McKeeby,* 5 Nev. 369; *Wm. Sutton v. McIlhany et al.,* 1 Ohio Dec. Repr. 235; *Wood v. Fitzgerald,* 3 Ore. 569; *Opinion of Judges,* 4 R. I. 583) ; in suits to recover penalties for taxes (*Hutton v. McCleskey,* 132 Ark. 391; *Carmichael v. Banks,* 102 Ga. 217) ; suits involving title to land (*Menger v. Caruthers,* 3 Kan. App. 75) ; in actions upon notes given for fines (*Baldwin et al. v. Scoggin, Use, etc.,* 15 Ark. 427; *Bird v. Breedlove,* 24 Ga. 623; *Parrott v. Wilson,* 51 Ga. 255) ; in determining classification for army service (*United States v. Commanding ·Officer of 78th Division,* 252 Fed. 314) ; in suit on contract for lease of convicts (*State of Tennessee v. Ward & Briggs,* 56 Tenn. 100) ; in extradition proceedings (*State v. Saunders,* 288 Mo. 640) ; in suits in equity to set aside pardon (*Rathbun v. Baumel,* 196. Iowa 1233) ; and upon the trial of one pardoned (*Michael v. The State,* 40 Ala. 361; *Powers v. Commonwealth,* 110 Ky. 386). Perhaps this list is not complete, but it is sufficient at least to show the variety of the proceedings in which the courts have been called upon to pass upon the authority of the pardoning official and the validity of pardons and to construe their effect.

The pardoning power is in derogation of the law. (Bulwer's L. D., p. 2446; *The State v. Leak*, 5 Ind. 359, 363; *Ex parte Higgins*, 14 Mo. App. 601.) That is to say, if laws could always be enacted and administered so they would be just in every circumstance to which they are applied there would be no need of the pardoning power. A pardon issued to one fairly convicted of the violation of law, which is just when applied to him, is bad and tends to demoralization of government. But human intelligence and human actions are not perfect. The "wit of man" is not such as to enable him always to foresee the occasional unjust consequences of the enforcement of a general statute which under ordinary circumstances is just and beneficial. Realizing the inherent imperfection of human intelligence and of human action and realizing from the histories of governments that beneficial general laws properly enforced will occasionally reach a decidedly unjust result, a just government will make provision for exercising a clemency in such exceptional cases. The constitutional provisions in foreign governments illustrate this. The constitution of the Kingdom of Belgium, 1831, article 73, provides that the king "shall have the right to remit or to reduce the sentences pronounced by the judges, save those who are decreed regarding the ministers." In article 91: "The king cannot pardon a minister condemned by the court of appeals, except upon the demand of one of the two houses." Constitution, republic of France, 1875, article 3: "The president of the republic . . . has the right of pardon; amnesty can be granted by law only." Constitution, kingdom of Prussia, 1850, article 49: "The king shall have power to pardon, and to mitigate punishment. But in favor of a minister condemned for his official acts, this right can only be exercised on the motion of that chamber whence his impeachment emanated. Only in virtue of a special law can the king suppress inquiries already instituted." By the constitution of the empire of Germany, 1871, chapter 4, the king of Prussia became the German emperor. Constitution, empire of Japan (23d year of Meiji), chapter 1, article 16: "The emperor orders amnesty, pardon, commutation of punishment, and rehabilitation." Constitution, United States of Mexico, 1857, article 85: "The powers and obligations of the president are: . . . § 15. To grant, in accordance with the laws, pardons to criminals sentenced for crimes within the jurisdiction of the federal tribunals." Constitution, empire of Brazil, 1824, article 98, the moderating powers of the emperor, "the key

to the whole political organization," may be exercised by the emperor (art. 101) "in pardoning and moderating the verdicts imposed upon condemned criminals" (§ 8), and "in urgent cases in conceding such grace and pardon as may be suggested by humanity and the welfare of the state" (§ 9). Constitution, United States of Brazil, 1889, has the exclusive functions of the president of the republic, article 48, § 6, "to pardon and commute penalties in cases of crimes subject to federal jurisdiction," except cases of impeachment and crimes committed by ministers of state.

To understand the nature and effect of the pardoning power we naturally look to its use in England, from whence our theory of it was obtained. (*United States v. Wilson*, 32 U. S. 150.) We shall not attempt to trace its origin; those who care to do so will find a splendid review of it in chapter 1 of Smithers & Thorn's Executive Clemency in Pennsylvania. Anciently the right of pardoning offenses within certain districts was claimed by the lords marches and others, who had *jura regalia* by ancient grants from the crown or by prescription, but this was done away with in 1535 by an act of parliament (27 Henry VIII, ch. 24, § 1), which provides:

"That no person or persons, of what estate or degree soever they be, . . . shall have any power or authority to pardon or remit any treasons, murders, manslaughters, or any kinds of felonies, whatsoever they be; nor any accessories to any treasons, murders, manslaughters or felonies; or any outlawries for any such offenses afore rehearsed, committed, perpetrated, done or divulged, or hereafter to be committed, done or divulged, by or against any person or persons in any part of this realm, Wales, or the marches of the same; but that the king's highness, his heirs and successors, kings of this realm, shall have the whole and sole power and authority thereof united and knit to the imperial crown of this realm, as of good right and equity it appertaineth."

Thereafter no other person had authority to issue pardon, but parliament continued on occasions to issue pardons, both by general and special act, and also to limit in effect the classes of offenses to which pardons apply, and provided that under certain circumstances a prisoner was entitled to a pardon as a matter of right, and under other circumstances he was entitled to a pardon as a matter of equity, and also to regulate the manner of their issue and the effect to be given them. When it is reasonably presumed the king is deceived the pardon is void. The prerogative of mercy had to be exercised through a responsible minister, usually the home secretary. The effect of a full pardon, in so far as it related to the crime

for which the pardon was given, was to make of the prisoner a new man, not so much to restore his former, as to give him a new, credit and capacity. (4 Bla. Com. 261, 314, 331, 337, 376, 396, 402; Hawkins' Pleas of the Crown, p. 37; Chitty's Crim. Law, ch. 19; Bishop's Crim. Law, 9th ed., §§ 898 to 926; Anson, Laws & Customs of the Crown, vol. 2, part 1, p. 46; part 2, pp. 19, 26, 27.) The criminal practice formerly in use in England naturally tended to produce unjust results with comparative frequency. In most felonies the punishment was death. The accused was not allowed to have witnesses sworn in his behalf; neither was he allowed counsel on the general issue, but only by permission of the court for the argument of special questions of law. Jurors were subject to fine and imprisonment in case an acquittal was not sanctioned by the judges. No right of new trial was recognized and there was no appeal save to the clemency of the king. This called for a frequent but considerate use of the pardoning power. The right of accused to counsel on the general issue was not recognized by statute until 1836. (6 & 7 Wm. IV, c. 114.)

Generally speaking, the English theory of government was that all powers of government emanated from the king. Laws were enacted, adjudicated and administered by his authority. Prosecutions were conducted in his name. It was the king's peace or the peace and good order of the king's realm which was offended by crime, hence the king could bestow his mercy by pardon. We have a different theory of government. *The State v. Dunning*, 9 Ind. 20, 23; *Cook v. Freeholders of Middlesex*, 26 N. J. L. 326, 345. When we withdrew from England we established our government upon the principle that all governmental power is inherent in the people. (U. S. Const., 9th & 10th Amendments; *Livingston v. Moore*, 32 U. S. 551; *Turner v. Williams*, 194 U. S. 279; Const. of Kans., Bill of Rights, §§ 2, 20.) Hence crime is an offense against the people, prosecuted in the name of the people, and the people alone can bestow mercy by pardon. Under our form of government, in which we separate, as nearly as can be done, the executive, legislative and judicial branches of government, the pardoning power is neither inherently nor necessarily an executive power, but is a power of government inherent in the people, who may by constitutional provision place its exercise in any official, board or department of government they choose. In *State v. Nichols*, 26 Ark. 74, 77, it was said:

"So long as the people do not infringe upon the power already delegated

to the general government, they are fully authorized to deposit power in such branches as to them may seem best. To illustrate: They had the right to withhold all pardoning power from any one of the three branches; or, on the other hand, they had the right to vest the pardoning power in either the legislative or judicial branches of the state government. The pardoning power no more vests in the governor, by virtue of his position, than it does in the judicial branch of the government, when the constitution is silent."

In *The State v. Dunning,* 9 Ind. 20, 23, it was said:

"The governor, then, simply by virtue of his office as such, takes no power touching pardons. . . . He derives his power from the constitution and laws alone."

In *Moore v. City of Newport,* 248 S. W. 837 (Ky.) :

"The pardoning power is not inherent in any department or officer of the state, and the people may lodge it in any department they see fit or in a board of pardons."

In *Laird v. Sims,* 16 Ariz. 521, it was said:

"The pardoning power is not inherent in any state officer or department, but the people, in adopting a constitution, may confer the power on officers or departments as they see fit."

This is more clearly demonstrated by the provisions of our federal and state constitutions upon the subject. By our federal constitution of 1789 it is provided (art. 2, § 2) :

"The president . . . shall have power to grant reprieves and pardons for offenses against the United States except in cases of impeachment."

This has been held to include the power to grant conditional pardon (*United States v. Wilson,* 32 U. S. 150; *Semmes v. United States,* 91 U. S. 21) ; to commute sentences (*Thompson v. Duehay,* 217 Fed. 484; *Harlan v. McGourin,* 218 U. S. 442) ; to remit fines and forfeitures (*Osborn v. United States,* 91 U. S. 474; *The Laura,* 114 U. S. 411) ; and to grant amnesty by proclamation (*Jenkins v. Collard,* 145 U. S. 546) ; and this power may be exercised at any time after the offense has been committed (*United States v. Burdick,* 211 Fed. 492), before conviction or afterwards (*Ex parte* Garland, 71 U. S. 333; *In re Spenser,* 5 Sawyer [C. C. Rep.] 195), and even after sentence of imprisonment has been served (*Stetler's Case,* Fed. Case No. 13,380), and this power cannot be limited or controlled in any way by legislative action (*United States v. Klein,* 80 U. S. 128; *Carlesi v. New York,* 233 U. S. 51).

While it is thus seen that the president's pardoning power is less restricted than that of the English king, it has been seldom abused,

because ordinarily applications are required to be presented through or referred to the department of justice. Then there is the lack of direct contact with local influences. But in the states where officers are elected by popular vote for short terms and are in close touch with local influences, the exercise of the pardoning power by one man, without his power to pardon being regulated or restricted, has been the subject of much just criticism. For this reason most of the state constitutions have restricted or regulated the exercise of the pardoning power, and many have changed the regulations and restrictions from time to time or provided that such changes may be made by the legislature.

The constitutional provisions of the several states which formed the union when our constitution was adopted, in the order of their admission, pertaining to the exercise of the pardoning power, with the decisions of the court thereon up to that time, are of value in determining the meaning of the language of our constitutional provision.

The Delaware constitution of 1776, article 7, gave the governor power to grant pardons and reprieves except where the prosecution shall be carried on by the house of assembly, "or the law shall otherwise direct," but the constitution of 1831, article 3, § 9, gave him "power to remit fines and forfeitures and to grant reprieves and pardons, except in cases of impeachment," and later a provision was added requiring him to report to the legislature.

The Pennsylvania constitution of 1776, § 20: "The president, . . . with the council . . . shall have power . . . to grant pardons and remit fines, in all cases whatsoever, except in cases of impeachment; and in cases of treason and murder shall have power to grant reprieves, but not to pardon, until the end of the next sessions of assembly." But this was changed by the constitution of 1790, article 2, § 9, giving the governor "power to remit fines and forfeitures, and grant reprieves and pardons, except in cases of impeachment," and this was carried into the constitution of 1838, though there was much debate there about changing it, and it was brought out in the convention that 4,461 pardons in relief of actual imprisonment had been given under the constitution of 1790.

The New Jersey constitution of 1776, § 9, provides that the governor and council "be the court of appeals, in the last resort, in all

causes of law, as heretofore; and that they possess the power of granting pardons to criminals, after condemnation, in all cases of treason, felony or other offenses." In the constitution of 1844, article 5, § 9, the governor was given "power to suspend the collection of fines and forfeitures, and to grant reprieves" for not more than ninety days, except in cases of impeachment; and (art. 5, § 10) the governor, "the chancellor, and the six judges of the court of errors and appeals" were given power to "remit fines and forfeitures, and grant pardons,. after conviction, in all cases except impeachment." In *Cook v. Freeholders of Middlesex,* 26 N. J. L. 326 (1857), it was said: "Our constitution of 1776 only gave to the executive the power to grant pardons after condemnation. When our constitution of 1844 came to review the ground more carefully, they gave the additional power to remit fines and forfeitures, thereby recognizing the distinction. . . ."

In Georgia the charter of 1754 gave the governor power to pardon all crimes save treason and murder, and the first state constitution, 1777, article 19, provided: "The governor shall, with the advice of the executive council, exercise the executive powers of government, according to the laws of this state and the constitution thereof, save only in the case of pardons and remission of fines, which he shall in no instance grant; but he may reprieve a criminal, or suspend a fine, until the meeting of the assembly, who may determine therein as they shall judge fit." By the constitution of 1798, article 2, § 7, the governor was given "power to grant reprieves for offenses against the state, except in cases of impeachment, and to grant pardons or to remit any part of a sentence, in all cases after conviction, except for treason or murder, in which cases he may respite the execution, and make report thereof to the next general assembly, by whom a pardon may be granted."

In the Connecticut charter of 1662 the power of pardon was in the general assembly, and this continued until the formation of the constitution in 1818, which provides (art. 4, § 10) that, "The governor shall have the power to grant reprieves after conviction, in all cases except thost of impeachment, until the end of the next session of the general assembly, and no longer."

The Massachusetts constitution of 1780, article 8: "The power of pardoning offenses, except such as persons may be convicted of before the senate by an impeachment of the house, shall be in the

governor, by and with the advice of council; but no charter of pardon granted by the governor, with advice of the council before conviction, shall avail the party pleading the same, notwithstanding any general or particular expressions contained therein, descriptive of the offense or offenses intended to be pardoned." And in the opinion of the justices on the right of the legislature to commute punishment, 14 Mass. 472 (1787), it was held that the power to commute was included within the power of pardon and by the constitution was vested in the governor and council; hence the legislature had no authority to commute a sentence.

The Maryland constitution of 1776, article 33, provides: "The governor . . . may . . . grant reprieves or pardons for any crime, except in such cases where the law shall otherwise direct"; and this was amended in 1851, article 2, § 19, giving the governor power to grant reprieves and pardons except in cases of impeachment and in cases in which he is prohibited by other articles of the constitution, and to remit fines and forfeitures, but not to remit the principal or interest of any debt due the state except in cases of fines and forfeitures, "and before granting a *nolle prosequi,* or pardon, he shall give notice, in one or more newspapers, of the application made for it, and of the day on or after which his decision will be given"; and providing for his reporting to the legislature.

The South Carolina constitution of 1790, article 2, § 7, gave the governor power to grant reprieves and pardons after conviction, except in cases of impeachment, "in such manner, on such terms and under such restrictions as he may think proper; and he shall have power to remit fines and forfeitures unless otherwise directed by law." In *State v. Williams,* 1 N. & M. C. 26 (1817), it was held the governor could remit the part of a fine that went to the state, but not that going to the informer; and in *State v. Simpson,* 1 Bailey 378 (1829), a statute requiring fines to be paid to commissioners of public buildings for public buildings did not destroy the constitutional power of the governor to remit fines; and in *State v. Chitty,* 1 Bailey 379 (1829), it was held that the governor may grant a pardon after conviction while the convict's case is pending on appeal.

The New Hampshire constitution of 1793, article 51, was identical with the similar provision in the Massachusetts constitution.

The Virginia constitution of 1776, article 9, provided that the governor "shall, with the advice of the council of state, have the

power of granting reprieves or pardons," except in cases of impeachment; and in the constitution of 1830, article 4, § 4, he was given power to grant reprieves and pardons except in impeachment cases "or the law shall otherwise particularly direct." And the constitution of 1850, article 5, § 5: "He shall have power to remit fines and penalties in such cases and under such rules and regulations as may be prescribed by law; and, except where the prosecution has been carried on by the house of delegates, or the law shall otherwise particularly direct, to grant reprieves and pardons after conviction, and to commute capital punishment"; with a provision for his reporting to the general assembly.

In the New York charter of 1664 there was given "full and absolute power and authority to correct, punish, pardon, govern and rule" the colony, and in the commission appointing Thomas Dongan governor, in 1683, he was authorized to remit fines, also to "pardon and remit all manner of crimes before or after conviction," except high treason and murder, and in these cases was given the power to reprieve, and this power in effect was continued through the colonial period. In the first state constitution, 1777, article 18, the governor's power included "his discretion, to grant reprieves and pardons to persons convicted of crimes, other than treason or murder, in which he may suspend the execution of the sentence, until it shall be reported to the legislature," which could pardon those offenses; and in the constitution of 1821, article 3, § 5, the governor was given "power to grant reprieves and pardons, after conviction, for all offenses except treason and cases of impeachment." In the third constitution, 1846, article 4, § 5, he was given "power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons." Treason could be pardoned by the legislature. In *In re Edymoin,* 8 How. Pract. 478 (1852), it was held by a county court judge that the legislature did not intend to have the governor's jurisdiction to pardon to depend upon an application made to him in a particular way.

The North Carolina constitution of 1776, § 19: "The governor, . . . shall have the power of granting pardons and reprieves, except where the prosecution shall be carried on by the general assembly, or the law shall otherwise direct."

Rhode Island was governed under the royal charter of 1663, which vested the pardoning power in the general assembly until the constitution of 1842, article 7, § 4, provided that the governor "shall have power to grant reprieves after conviction, until the end of the next session of the general assembly," and by an amendment adopted in 1854 it was provided: "The governor, by and with the advice and consent of the senate, shall hereafter exclusively exercise the pardoning power, except in cases of impeachment, to the same extent as such power is now exercised by the general assembly."

In the Vermont constitution of 1777 the governor, with the council, was given power to grant pardons and remit fines except in cases of treason, murder and impeachment. Treason and murder could be pardoned only by the general assembly.

The Kentucky constitution of 1792 gave the governor power to remit fines and forfeitures and grant reprieves and pardons except in cases of impeachment, and this was continued in the constitution of 1799 and in the constitution of 1850, with this added, "But he shall have no power to remit the fees of the clerk, sheriff or commonwealth's attorney in penal or criminal cases."

The Tennessee constitution of 1796 gave the governor power to grant reprieves and pardons after conviction, except in cases of impeachment, and this was continued in the constitution of 1834. In *State v. Fleming*, 26 Tenn. 152 (1846) it was held: "The legislature had no power, by resolution, to direct that an individual, who stands charged with a crime, be discharged therefrom."

The Ohio constitution of 1808 gave the governor power to grant reprieves and pardons after conviction except in cases of impeachment, and in the constitution of 1851, article 3, § 11, it was provided: "He shall have power, after conviction, to grant reprieves, commutations and pardons for all crimes and offenses, except treason and cases of impeachment, upon such conditions as he may think proper, subject, however, to such regulations, as to the manner of applying for pardons, as may be prescribed by law."

The Louisiana constitution of 1812, article 3, § 11, gave the governor power "to remit fines and forfeitures, and, except in cases of impeachment, to grant reprieves and pardons, with the approbation of the senate"; and this, in substance, was carried into their constitution of 1852.

The Indiana constitution of 1816, article 4, § 10, gave the governor power "to remit fines and forfeitures, grant reprieves and par-

dons, except in cases of impeachment." In the constitution of 1851, article 5, § 17, he was given "power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, subject to such regulations as may be provided by law." The general assembly was given power to pardon in cases of treason, and the governor was given "power to remit fines and forfeitures, under such regulations as may be prescribed by law," and he was required to make a report to the legislature, and it was "Provided, however, that the general assembly may, by law, constitute a council, to be composed of officers of state, without whose advice and consent the governor shall not have power to grant pardons in any case except such as may by law be left to his sole power." In *The State v. Leak,* 5 Ind. 359 (1854), it was said (p. 363) : "Pardons and remissions are in derogation of the law, and should never be extended except in cases which, could the law have foreseen, it would have excepted from its operation; yet the heedlessness with which they had been granted had become a serious evil. Our new constitution, article 5, section 17, attempted to provide for some check upon this abuse; but the most effective corrective will be found in the strict application to those acts of executive grace of the rules of law by the courts." In *The State v. Dunning,* 9 Ind. 20 (1857), it was held: "The power of the governor, under the present constitution, to remit fines and forfeitures is not absolute. It can only be exercised pursuant to legislative direction." It was said (p. 23), after quoting article 5, § 7, of the constitution of 1851: "The new constitution differs from the old in few points more widely than upon this of the pardoning power. Two lines in the old stood in the place of half a page in the new. . . . We know the object of the change. The granting of pardons, remissions, etc., had become an abuse, and it was the intention to arrest that abuse." In this case it was held that a pardon which had been issued without compliance with the statute providing "that all applicants to the governor for the remission of fines and forfeitures shall forward to him, with their application, the opinion of the propriety of so doing, of a majority of the following officers in the county where the fine was assessed or forfeiture occurred, viz., the clerk of the circuit court, auditor, sheriff, county treasurer, and such officers as shall from time to time have the care and custody of the common-school fund within the county," was void. In *Henby v. Trustees of Ripley Township,* 10 Ind. 45 (1857), it was said: "This

41—116 Kan.

court decided, in the case of *The State v. Dunning*, 9 Ind. 20, that the governor had no power to remit a forfeiture until the legislature had 'prescribed the regulations.' "

The Mississippi constitution of 1817, article 4, § 10, gave the governor power in all criminal and penal cases, except treason and impeachment, "to grant reprieves and pardons and remit fines and forfeitures, under such rules and regulations as shall be prescribed by law." Treason could be pardoned by the legislature. In the constitution of 1832, article 5, § 10, he was given power in all criminal cases, except treason and impeachment, "to grant reprieves and pardons and remit fines, and in cases of forfeiture to stay the collection until the end of the next session of the legislature, and to remit forfeitures, by and with the advice and consent of the senate." Treason could be pardoned by the governor and senate.

The Illinois constitution of 1818, article 3, § 5: "He shall have power to grant reprieves and pardons after conviction, except in cases of impeachment." In *Rankin v. Beard*, 1 Ill. 163 (1826), the legislature by an act released a person from imprisonment who was convicted of forgery, and the statute was held valid without any comment on whether it infringed the pardoning power of the governor.

In the Alabama constitution of 1819, article 4, § 11, the governor was given power in all criminal and penal cases, except treason and impeachment, "to grant reprieves and pardons and remit fines and forfeitures under such rules and regulations as shall be prescribed by law." Treason could be pardoned by the governor with the advice and consent of the senate. In *Hawkins v. State*, 1 Port. 457 (1835), one was convicted of larceny and pardoned, and later indicted on another charge of larceny and pleaded the pardon, contending that the offense, if committed at all, was prior to the issuance of the pardon; but the court held the plea not good; that the rule of common law that a pardon relieved of all crimes committed prior to its issuance had no application in this country for the reason that it was based on attainder and corruption of blood and consequent forfeitures resulting from conviction, all of which were done away with by the constitution.

The Maine constitution of 1819, article 4, § 11, gave the governor power, with the advice and consent of the council, to remit, after conviction, all forfeitures and penalties and to grant reprieves and pardons, except in cases of impeachment.

The Missouri constitution of 1820, article 4, § 6: "The governor shall have power to remit fines and forfeitures; and, except in cases of impeachment, to grant reprieves and pardons." In *The State v. Sloss,* 25 Mo. 291 (1857), it was held that the pardoning power belongs exclusively to the executive department of the government and cannot be exercised by the legislative department, and in *The State v. Woolery,* 29 Mo. 300 (1860), it was held that the pardoning power granted by the constitution to the governor extends to the granting of pardons as well before as after conviction.

In the Arkansas constitution of 1836, article 5, § 11, the governor was given power in all criminal and penal cases, except treason and impeachment, "to grant pardons after conviction, and remit fines and forfeitures, under such rules and regulations as shall be prescribed by law." Treason could be pardoned by the governor with the advice of the senate.

The Michigan constitution of 1835, article 5, § 11, gave the governor power to grant reprieves and pardons after conviction except in cases of impeachment; and the constitution of 1850, article 5, § 11: "He may grant reprieves, commutations and pardons after convictions, for all offenses except treason and cases of impeachment, upon such conditions, and with such restrictions and limitations, as he may think proper, subject to regulations provided by law relative to the manner of applying for pardons." Provision was made for the pardon of treason and making reports to the legislature.

The Florida constitution of 1838, article 3, § 11, gave the governor power in all criminal and penal cases, except treason and impeachment, after conviction, "to grant reprieves and pardons and remit fines and forfeitures, under such rules and regulations as shall be prescribed by law."

The Texas constitution of 1845, article 5, § 11: "In all criminal cases, except in those of treason and impeachment, he shall have power, after conviction, to grant reprieves and pardons, and, under such rules as the legislature may prescribe, he shall have power to remit fines and forfeitures." Treason could be pardoned with the consent of the legislature.

The Iowa constitution of 1846, article 4, § 13, gave the governor power to grant reprieves and pardons and commute punishments after conviction, except in cases of impeachment, and the constitution of 1857, article 4, § 16, gave the governor power to grant re-

prieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, subject to such regulations as may be provided by law. · Treason could be pardoned by the general assembly, and the governor was given power "to remit fines and forfeitures under such regulations as may be prescribed by law," and he was required to make reports to the general assembly.

The Wisconsin constitution, 1848, article 5, § 6, gave the governor power "to grant reprieves, commutations and pardons, after conviction, for all offenses," except treason and impeachment, subject to such regulations as may be provided by law relative to the manner of applying for pardons. Treason can be pardoned by the legislature.

The California constitution of 1849, article 5, § 13, gave the governor power "to grant reprieves and pardons, after conviction, for all offenses except treason and impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons." Treason could be pardoned by the legislature, and there was a provision requiring report to the legislature.

The Minnesota constitution of 1856 gave the governor power to grant reprieves and pardons, after conviction, for offenses against the state, except in cases of impeachment.

The Oregon constitution of 1857 gave the governor power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason, subject to such regulations as may be provided by law. Treason could be pardoned by the legislature, and the governor was given power "to remit fines and forfeitures under such regulations as may be provided by law," and he was required to report to the legislature.

The foregoing summary of the pardoning power and the manner in which it had been conferred, either in its entirety or with the restrictions and regulations, was available to the members of the constitutional convention which framed our constitution, and help us to understand the meaning of the language which they used when they said: "The pardoning power is vested in the governor, under regulations and restrictions provided by law." While there had been controversy over the questions, it had been decided that the pardoning power in its general scope included the power to grant reprieves, commutations of sentences, pardons or commutations

with any conditions which were not immoral, illegal or impossible, and the power to remit fines and forfeitures in penal cases. Instead of subdividing this pardoning power, as had been done in many of the state constitutions, they put all of it together and said, "The pardoning power is vested in the governor." But it is evident that it was not intended this power should be used in its broadest sense at any time after the commission of the offense, either before conviction or after conviction; that there might be crimes and offenses to which they would not care to have it exercised by the governor alone, such as treason and cases of impeachment, one or both of which had been separately treated in almost every state constitution previously adopted, as had also murder in some constitutions; that there would be the question whether the governor should in all cases exercise this power in its broadest sense without advice, in some instances from the legislature or one branch thereof, or from the judge of the court, prosecuting attorney, or other officials where the case was tried, or a board or commission of some character. All of these were matters to be considered. Instead of placing specific restrictions and regulations in the constitution which might not prove to be as complete or as practical as would be desired, and which would be difficult to change, they vested this power "under regulations and restrictions provided by law."

In *Durland v. Durland,* 67 Kan. 734, 736, 74 Pac. 274, construing the word "regulation" as used in our constitution, "all power to grant divorces is vested in the district courts, subject to regulation by law" (Const., art. 2, § 18), it was said:

"The word 'regulation' is of broad signification, and in the absence of restrictive words the power granted must be regarded as plenary over the entire subject. The causes for which a divorce may be granted may be prescribed, and none other will suffice. Rules of procedure to be followed by the courts in granting relief for the causes named may be established, and no other course may be pursued. The rights, duties and obligations of the parties may be fixed and their social status determined as a consequence of divorce, and so far as this is done it is conclusive. The period for which a breach of matrimonial duty must be endured before an action may be brought may be ordained. The conduct of the cause may be prolonged and the ultimate effect of the decree postponed. And since a judgment of divorce is, in the absence of some countervailing law, self-executing, the legislature may impose upon the judgment itself such limitations as shall effect a stay."

In the light of this decision the word "regulation" used in the constitutional provision pertaining to pardoning power would authorize

the legislature to establish a procedure for the granting of pardons, without compliance with which a pardon could not be granted. But the framers of our constitution were not content to use the word "regulations" alone; in addition to that they used the word "restrictions," which no doubt was intended to mean a limitation upon the classes of crimes for which pardons could be granted or the time with reference to the commission of a crime or the trial of the accused therefor, and the result is that the sweeping pardoning power vested in the governor can be exercised only in accordance with such restrictions and regulations as are provided by law.

This view is evidently the one which was taken at an early day in this state. In 1864 an act was passed prohibiting the granting of pardons before conviction, requiring applications to be made in a particular way, and notice to be given, before a pardon should be granted, and defining the class of commutations that might be issued. So far as the opinions of this court disclose, no one has ever contended in this state that a pardon might be granted in violation of the restrictions and regulations provided by law.

Because the section of the statute defining the kinds of commutations which might be issued in different cases (R. S. 62-2220) said nothing about giving notice, there had grown up in this state a practice of issuing commutations of sentence without notice. It may be doubted if this was ever a correct interpretation of the statute (*Opinion of the Justices*, 14 Mass. 472), but that question need not be decided. The practice became objectionable, and to avoid it the legislature of 1921 amended the section with reference to giving notice before the issuance of a pardon so that it specifically included commutations, and it is specifically provided that the pardon, commutation or parole "shall not be issued" by the governor until the notice as specified has been given. There was no attempt to comply with this statute in this case; hence we are not concerned with what would be the result if there were simply some irregularity or defect in the notice as given. Here there was no notice; hence no power to issue the commutation. The following Kansas cases deal with some phase of the pardoning power, though none of them dispose of the question here involved: *Menger v. Carruthers*, 3 Kan. App. 75, 57 Kan. 425, 46 Pac. 712; *Weatherwax v. The State*, 17 Kan. 427; *In re Boyd, Petitioner*, 34 Kan. 570, 9 Pac. 240; *The State v. Page*, 60 Kan. 664, 57 Pac. 514; *Deering v. Cunningham*, 63 Kan. 174, 65 Pac. 263; *The State v. Stephenson*, 69 Kan. 405, 76 Pac. 905; *The*

*State v. Nite,* 81 Kan. 204, 105 Pac. 220; *Mikesell v. Wilson County,* 82 Kan. 502, 108 Pac. 829; *In re Patterson,* 94 Kan. 439, 146 Pac. 1009; *Garvey v. Brown,* 99 Kan. 122, 160 Pac. 1027; *In re Henry Millert, Petitioner,* 114 Kan. 745, 220 Pac. 509; *In re C. H. Charles and Louis Howard, Petitioners,* 115 Kan. 323, 222 Pac. 606.

This view of our constitution is strengthened by an examination of the changes made in the constitutions of other states and in the states admitted since our constitution was framed and the decisions of the courts thereon.

Alabama amended its constitution several times, the last constitution of 1901, § 124, gives the governor "power to remit fines and forfeitures under such rules and regulations as may be prescribed by law; and, after conviction, to grant reprieves, paroles, commutations of sentence and pardons, except in cases of impeachment. The attorney-general, secretary of state and state auditor shall constitute a board of pardons, who shall meet on the call of the governor, and before whom shall be laid all recommendations or petitions, for pardon, commutation or parole, in cases of felony; and the board shall hear them in open session and give their opinion thereon in writing to the governor." The governor is not compelled to follow the recommendation of the board.

The Arizona constitution of 1910, article 5, § 6, gave the governor power "to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as may be provided by law." A statute created a board of pardons with exclusive power to pass on and recommend pardons and declared that no pardon should be granted by the governor unless recommended by the board. In *Laird v. Sims,* 16 Ariz. 521, the statute was held valid; the court said, p. 522: "The question is, Who, under our constitution and law, is empowered and authorized to grant pardons?" and on page 523 it was said of the pardoning power: "It is not a power under our system of government inherent in any officer of the state, or any department of the state. The people in framing and adopting their constitution could have lodged the power in the legislature or in the governor, secretary of state or auditor, or either of them, or in the members of this court or either of them, or, as has been done in some of the state constitutions, in a board of pardons." In *State v. Sims,* 17 Ariz. 410, it was held that

the placing of the power in the governor to suspend the execution of a death sentence means that he may exercise such power upon the request of the board of pardons. In *Clark v. State*, 23 Ariz. 470, a statute provding that a convict serving an indeterminate sentence shall not be permitted to file application for a pardon until his minimum term has expired was held valid.

The Arkansas constitution of 1868 gave the governor power to grant reprieves, pardons and commutations after conviction, except in cases of treason and impeachment, "upon such conditions and with such restrictions and limitations as he may think proper; subject, however, to such regulations as may be prescribed by law relative to the manner of applying for pardons." In *The State v. Nichols*, 26 Ark. 74 (1870), it was held that the pardoning power conferred upon the governor by the constitution to pardon *after conviction* did not prohibit the exercise of that power by the legislature before conviction. In *Hutton v. McCleskey*, 132 Ark. 391 (1918), the constitutional power of the governor to remit fines and forfeitures and to grant pardons in criminal cases was held to be confined to criminal cases after conviction and judgment, and not to authorize the granting of general amnesty, nor to relieve from civil penalties and forfeitures.

The constitution of California, 1918, article 7, § 1, was amended so as to include a provision that neither the governor nor the legislature shall have power to grant pardons or commutations of sentences in any case where the convict has been twice convicted of a felony, unless upon the written recommendation of the majority of the judges of the supreme court. In *People v. Bowen*, 43 Cal. 439 (1872), in discussing the difference in the pardoning power under the federal and state constitutions, it was said, p. 441: "It is also true that . . . the pardoning power of the president is unrestrained by legislative control, while that of the governor is subject, in its exercise, to such regulations as the legislature may provide in relation to the manner of applying for pardons." In *In re Wilson*, 29 Cal. App. 702, the court held that the constitution makes no distinction between a power of the governor to grant pardons and to commute sentences, and in either case he has power to attach such conditions as he thinks proper; and in *Ex parte Kelly*, 155 Cal. 39 (1908), it speaks of the pardoning power of the governor as being absolute under the constitution except in cases of prior conviction.

The Colorado constitution of 1876, article 4, § 4, gave the governor power to grant reprieves, commutations and pardons after conviction, except for treason and impeachment, subject to such regulations as may be prescribed by law relative to the manner of applying for pardons.

The Connecticut constitution has been unchanged, but the general statute revision of 1918 created a board of pardons composed of the governor, judge of the supreme court of errors and four other persons, one of whom shall be a physician, and provides: "The jurisdiction for granting commutations of punishment and releases, conditioned or absolute, from the state prison, and also commutations of the death penalty, shall be vested in said board." (§ 2014.)

There has been no change in Delaware.

Florida amended its constitution in 1868 and by article 6, § 12, provided: "The governor, justices of the supreme court, and attorney-general, or a major part of them, of whom the governor shall be one, may, upon such conditions and with such limitations and restrictions as they may deem proper, remit fines and forfeitures, commute punishments, and grant pardons after conviction, in all cases except treason and impeachments, subject to such regulations as may be provided by law relative to the manner of applying for pardons." This section was amended in 1885 so as to make the pardon board the governor, secretary of state, comptroller and commissioner of agriculture. In *Singleton v. State,* 38 Fla. 297 (1896), the court construed an act of the legislature "to restore Howard Bishop to civil rights." The act recited Bishop's conviction and purported to restore him to his civil rights. It was held that this act was void, as the pardoning power, after conviction, was by the constitution placed in the board of pardons.

The Georgia constitution was amended in 1868 and again in 1877, and this, article 5, paragraph 12, gives the governor "power to grant reprieves and pardons, to commute penalties, remove disabilities imposed by law, and to remit any part of a sentence for offences against the state, after conviction, except in cases of treason and impeachment, subject to such regulations as may be provided by law relative to the manner of applying for pardons."

The Idaho constitution of 1889, article 4, § 7, the governor, secretary of state and attorney-general constitute a board of pardons with "power to remit fines and forfeitures, to grant commutations

and pardons after conviction and judgment, either absolute or upon condition," except in cases of treason and impeachment. The legislature shall prescribe the sessions of the board and the manner in which application shall be made and regulate proceedings thereon, and no pardon can be granted until after a full hearing in open session and notice published for four weeks. In *In re Prout,* 12 Idaho 494 (1906), the powers of the board of pardons are discussed, and it was held that the board has no authority to increase the punishment pronounced by a court.

The Illinois constitution, amended in 1870, article 5, § 13, gave the governor "power to grant reprieves, commutations and pardons, after conviction, for all offenses, subject to such regulations as may be provided by law relative to the manner of applying therefor." In *The People v. La Buy,* 285 Ill. 141 (1918), it was held that the constitution vesting the power to grant pardons in the governor is a fundamental law and no act of the legislature in contravention thereof is valid.

Indiana has not amended its constitution, but in *Branham v. Lange,* 16 Ind. 497, 500 (1861), in discussing the power of the legislature under the constitution, it was said: "The legislature may prescribe rules . . . as to the granting of pardons, and has 'elaborated a set of rules to be observed by the courts.'" In *Butler v. The State,* 97 Ind. 373 (1884), it was held that under the limitations stated therein the constitution of the state conferred upon the governor exclusive power to remit fines and forfeitures and to grant reprieves, commutations and pardons. In *Woodward v. Murdock,* 124 Ind. 439 (1890), a distinction between a parole and a conditional pardon is discussed and held to be the same, and at page 442 it was said: "Under the constitution of our state the pardoning power is vested in the governor, subject to such rules and regulations as may be made by law."

Iowa, by the code of 1879, provided that in cases of murder in the first degree no pardon should be granted by the governor until he. shall have presented the matter and obtained the advice of the general assembly, and that before presenting it to the general assembly he shall cause notice containing the reasons assigned for granting the pardon to be published in two newspapers of general circulation, one at the capital and the other in the county where the conviction was had, for four weeks, the last publication to be twenty days prior to the commencement of the general assembly, at which the matter

will be presented. In *Arthur v. Craig*, 48 Iowa 264, 267, it was said: "The only restrictions upon the pardoning power imposed by law relate to pardons for murder in the first degree." In *State v. Beebe*, 87 Iowa 636, in dealing with the remission of fines, after quoting the constitutional provision it was said: "It will be seen that the legislature may regulate the action of the governor in this respect."

There has been no change in the Kentucky constitution. In *Commonwealth v. Bush*, 63 Ky. 264, it was held pardons may be granted before or after conviction. In *Powers v. Commonwealth*, 110 Ky. 386, where a pardon was offered during the trial, in determining the power of the pardoning official to issue it, the court practically decided a contest for governor. In *Moore v. The City of Newport*, 248 S. W. 837 (Ky. 1923), it was held that the pardoning power is not inherent in any department or officer of the state, and the people may lodge it in any department they see fit or in a board of pardons.

The Louisiana constitution of 1879 gave the governor power to grant reprieves for all offenses except impeachment, and "upon the recommendation in writing of the lieutenant governor, attorney-general and presiding judge of the court before which conviction was had, or any two of them, have power to grant pardons, commute sentences, and remit fines and forfeitures after conviction." (Art. 66.) Treason may be pardoned by the legislature only. This provision was carried into their constitution of 1913. In *State of Louisiana v. Baptiste and Martini*, 26 La. Ann. 134 (1874), the question arose as to whether or not there was sufficient showing that a pardon had been consented to by the senate. The court examined that question and held the evidence sufficient to show the consent of the senate. In *State, ex rel. Daniel, v. Rose*, 29 La. Ann. 755 (1877), it was held that the governor's commutation of a sentence of imprisonment does not entitle the party to relief from custody until the commutation has been consented to by the senate. The court went into the case thoroughly because of a practice that had grown up in recent years of extending executive clemency to convicts by way of commutation by the act of the governor alone without the consent of the senate, and held that there was no warrant for this in the organic law of Louisiana and that such commutations are void. In *The State v. Mehojovich*, 119 La. 791 (1907), it was held that the ruling of the board of pardons on an application for a hearing is not subject to revision by the judiciary.

In Maine it was provided by chapter 17, Laws of 1876, that applications for pardon in certain cases must first be submitted to the

justices of the supreme court, and it was held, in the opinion of the justices, 85 Me. 547, that the act referred to must be considered as permissive and not an exclusive method of application; otherwise the act must be held to be unconstitutional, since the constitution vested the pardoning power in the governor and council.

There is no change in the Maryland or Massachusetts constitutions. In *Kennedy's Case*, 135 Mass. 48 (1883), it was held that the constitution gave the governor, with the advice and consent of the council, power to grant conditional pardon; that a statute providing for the issuing of a conditional pardon did not enlarge that power, and in *Opinion of Justices*, 210 Mass. 609 (1912), it was held: " 'The power of pardoning offences,' which by Const. Mass c. 2, § 1, art. 8, with the exception there stated, is given to the governor by and with the advice of the council, includes not only absolute release from penalty imposed, but also commutation of sentence and respite of sentence," and that such power can be exercised only by the concurrent action of the governor and the council, and that a statute that a sentence of death must be executed "within the week appointed by the court, unless the governor pardons the crime, commutes the punishment therefor or respites the execution" thereof, and which makes no express reference to the council, must be interpreted as referring to the power of pardon, commutation and respite as given by the constitution, otherwise the provision would be void.

The Michigan constitution has been unchanged, and in *People v. Brown*, 54 Mich. 15 (1884), it was held: "The pardoning power . . . belongs to the governor alone; no judge can exercise it by indefinitely suspending the sentence"; and in *People v. Moore*, 62 Mich. 496 (1896) it was again held that the pardoning power is vested exclusively in the governor. In *Rich v. Chamberlain*, 104 Mich. 436 (1895), a statute providing for an advisory board in the matter of pardons and defining its power and duties was held not to be in conflict with the constitution, which vests the pardoning power exclusively in the governor, subject to regulations provided by law relative to the manner of applying for pardon. It was said, page 446: "While, however, the constitution unqualifiedly vests this power in the governor, it at the same time, and with equal clearness, vests in the legislature the power to provide, by law, regulations relative to the manner of applying for pardons. . . . Under this power it would clearly be competent for the legislature to provide

as regulations that the petition or application should be under oath; that it should first be submitted to the judge and prosecuting attorney, for them to indorse thereon or attach thereto such statements as they might deem proper to make touching the merits of the application, and designed to furnish the governor information upon which to base his action; that the testimony taken at the trial, if it exists, should accompany the petition; and that testimony under oath should be taken at the prison or elsewhere bearing upon the reasons urged in the petition for pardon." In *People v. Marsh,* 125 Mich. 410 (1900), it was held that the statute creating an advisory board does not preclude the direct exercise of executive clemency by the governor without the mediation of the board. In *Spafford v. Benzie, Circuit Judge,* 136 Mich. 25 (1904), a mandamus case to compel the judge to discharge the relator from custody, a pardon having been issued, which was attacked because of irregularities in its form, the court examined the objections and held that they did not affect its validity.

The Minnesota constitution, amended in 1896, provides: "The governor . . . shall have power, in conjunction with the board of pardons, of which the governor shall be *ex officio* a member, and the other members of which shall consist of the attorney-general of the state of Minnesota and the chief justice of the supreme court of Minnesota, whose powers and duties shall be defined and regulated by law, to grant reprieves and pardons, after conviction, for offenses against the state, except in cases of impeachment." Following that a statute was passed making specific requirements as to the application and the meetings of the board, and providing that a pardon shall not be granted without the unanimous vote of the board.

There has been no change in the Mississippi constitution, but in *Ex parte Fleming,* 60 Miss. 910 (1883), it was held that the governor has power, under the constitution, to grant a respite of a death sentence and to fix a later day for the execution. In *State v. Kirby,* 96 Miss. 629, it was held that under the constitution the exclusive power of pardon is in the governor. In *Montgomery v. Cleveland,* 98 So. 111 (Miss. 1923), the governor was absent from the state half a day, in which time the lieutenant governor issued a pardon, which the warden declined to honor, and the prisoner brought habeas corpus, which was defended on the ground that the lieutenant governor had no authority to issue it. The court held the pardon valid.

Missouri changed her constitution in 1865 and gave the governor

power to grant reprieves, commutations and pardons, after conviction, except for treason and impeachment, "subject to such regulations as may be provided by law relative to the manner of applying for pardons," and in *Ex parte Collins*, 94 Mo. 22 (1887), that was held to mean after a return of a verdict of guilty. In *State, ex rel.*, *v. Eby*, 170 Mo. 497 (1902), the court held valid an act of the legislature as a general amnesty act.

The Montana constitution of 1889 gave the governor power to grant pardons, absolute or conditional, and to remit fines and forfeitures and to grant commutations and respites, after conviction and judgment; provided, that before granting pardons, etc., the action of the governor concerning the same shall be approved by a board composed of the secretary of state, attorney-general and state auditor, and provides for meetings of the board, how applications shall be made, and that notice of the hearing be published in a newspaper for two weeks.

The Nebraska constitution of 1866 gave the governor power, after conviction, to grant reprieves, commutations and pardons, except for treason and impeachment, upon such conditions as he may think proper, subject to such regulations as to the manner of applying for pardon as may be provided by law, and this was amended in 1920 creating a board of pardons composed of the governor, attorney-general and secretary of state, and giving such board power to remit fines and forfeitures and to grant commutations, pardons and paroles after conviction and judgment, but providing that no such pardon shall be granted until after a full hearing in open session and notice of the time and place of hearing and of the relief sought by personal service on the judge of the court by which the sentence was pronounced and the county attorney where the offense was committed. In *Campion v. Gillan*, 79 Neb. 364 (1907), it was held that the word "offenses" as used in the constitution is equivalent to crime, and that the governor had no authority to order a sheriff to release a person committed to his custody by the judgment of the court.

The Nevada constitution of 1864 provided: "The governor, justices of the supreme court and attorney-general . . . may, upon such conditions and with such limitations and restrictions as they may think proper, remit fines and forfeitures, commute punishments and grant pardons, after convictions," in cases except treason and impeachment, subject to such regulations as may be provided by

law relative to the manner of applying for pardon. In *Ex parte Janes,* 1 Nev. 319 (1865), it was held that the governor of the territory of Nevada had a right to pardon absolutely or conditionally, but the governor of the state of Nevada could not pardon without the concurrence of at least two other members of the board, in whom the pardoning power is vested by the constitution, and that a pardon issued by the governor alone was void. In *Ex parte Shelor,* 33 Nev. 361 (1910), it was held that under the constitution the governor has no power to make an indefinite suspension of a sentence.

There has been no change in the New Hampshire constitution nor in that of New Jersey. In *Clifford v. Heller,* 63 N. J. L. 105 (1899), it was held that the executive has no power to grant reprieves except as given by the constitution, and *Lambert v. Barrett,* 157 U. S. 697 (1894), interpreting the constitution of New Jersey, held that the federal court must follow the interpretation given it by the highest court of the state.

The New Mexico constitution of 1911, article 5, § 6, provides: "Subject to such regulations as may be prescribed by law, the governor shall have power to grant reprieves and pardons, after conviction, for all offenses except treason and in cases of impeachment." A statute passed in territorial days attempted to restrict the granting of pardons by the governor. In *Ex parte Bustillos,* 26 N. M. 449 (1920), the court held this statute void, saying it prohibits the exercise of the power without the previous concurrence and recommendation of the penitentiary commissioners, which is a plain invasion of the rights and duties of the executive. It was said a constitutional grant of the pardoning power to the governor is subject to regulation by law, but not to restrictions upon the pardoning power itself.

The New York constitution has not been changed. In *People v. Hays,* 143 N. Y. S. 325 (1913), a pardon had been issued by Governor William Sulzer after articles of impeachment had been presented against him. It was held he had no authority to issue it and the pardon was void.

The North Carolina constitution was amended in 1868 so as to give the governor power to grant reprieves, commutations and pardons after conviction in cases except impeachment, subject to such regulations as may be provided by law relative to the manner of applying for pardons. In *State v. Blalock,* 61 N. C. 242 (1887),

an act of the general assembly giving complete amnesty, pardon and discharge on the payment of costs for homicides, felonies and misdemeanors committed prior to January 1, 1866, was held valid, but no mention was made of the pardoning power of the governor. In *State v. Bowman,* 145 N. C. 452 (1907), it was held that the pardoning power given by the constitution to the governor is an executive act of a quasi-judicial kind, and does not conflict with or exclude the power of the general assembly to pass an amnesty act in abolition or oblivion of the offense. The statute passed on was really an immunity statute.

The North Dakota constitution of 1889 gave the governor "power to remit fines and forfeitures, to grant reprieves, commutations and pardons, after conviction," except for treason and impeachment, but the legislative assembly may by law regulate the manner by which pardons and commutations may be applied for, and this was amended in 1900, giving the governor power, "in conjunction with the board of pardons," consisting of the governor, attorney-general and the chief justice of the supreme court and two qualified electors appointed by the governor, "to remit fines and forfeitures, and to grant reprieves, commutations and pardons, after conviction," except for treason and impeachment. In *In re Hart,* 29 N. D. 38 (1914), it was held: "The exclusive power to grant commutations and pardons is vested by article 3 of the amendments to the constitution of North Carolina in the board of pardons."

There has been no change in the Ohio constitution.

The Oklahoma constitution of 1904 gives the governor power to grant, after conviction, reprieves, commutations, paroles and pardons except in cases of impeachment, subject to such regulations as may be prescribed by law.

In Oregon there has been no change in the constitution. In *Ex parte Houghton,* 49 Ore. 232 (1907), it was held that the constitution gives the governor power to grant pardons after conviction, subject to such regulations as may be provided by law; that the only regulation which had been made by the legislature was one providing the governor may grant reprieves, pardons and commutations upon condition, and that this was but a restatement of the laws that already existed without legislative action.

The Pennsylvania constitution was amended in 1873 so as to give the governor "power to remit fines and forfeitures, to grant reprieves, commutations of sentence and pardons," except in cases of

Jamison v. Flanner, *Sheriff.*

impeachment, "but no pardon shall be granted nor sentence commuted except upon the recommendation in writing of the lieutenant governor, secretary of the commonwealth, attorney-general and secretary of internal affairs, or any three of them, after full hearing, upon due public notice and in open sessions." In *Hester v. Commonwealth*, 85 Pa. 139 (1877), a witness called in a criminal case was objected to as having been convicted of a felony. He had been pardoned. The defense objected to the pardon and offered to show that it was not obtained at a regular meeting of the board of pardons on the day fixed by the rules of the board, but at a special meeting to which no notice was given. This offer was denied, and the court held that while a pardon by the governor remains unrevoked by proceedings on the part of the commonwealth it must be considered as a valid charter. The pardon in this case recited a recommendation in writing by the lieutenant governor, secretary of the commonwealth and the attorney-general, and was held to be sufficient. In *Commonwealth v. Halloway*, 44 Pa. 210 (1863), a pardon procured by false and fraudulent representations was held void in a habeas corpus case. In *Diehl et al. v. Rodgers et al.*, 169 Pa. 316, 323, in speaking of the pardoning power, it was said: "The king's prerogative of pardon is by the common law, but an act of parliament is supreme, and can change the common law in respect to prerogative as well as to other matters, and if it has done so the prerogative is thereafter limited accordingly."

There has been no change in the Rhode Island constitution.

The South Carolina constitution was amended in 1895, requiring the governor to refer petitions for pardon to a board of pardons, which was to be provided by law, which board would investigate and recommend to the governor, but he was not compelled to follow their recommendation. In *Ex parte Norris*, 8 S. C. 408 (1876), in determining the authority to grant a pardon in a habeas corpus case, the court in effect heard a contest on the election of governor. In *State v. Harrison*, 115 S. E. 746 (1923), it was held that the power of the governor under the constitution to grant reprieves is unlimited and the court cannot inquire into the reasons which prompted it.

The South Dakota constitution of 1889 gave the governor power to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction, for all offenses except treason and impeachment, but provided that if the sentence of the court is capital punishment, imprisonment for longer than two years, or a fine exceeding

42—116 KAN.

$200, no pardon shall be granted, sentence commuted nor fine re-
mitted except upon the recommendation in writing of the board of
pardons, consisting of the presiding judge, secretary of state and
attorney-general.

The Tennessee constitution has been unchanged. In *State of
Tennessee v. Ward & Briggs,* 56 Tenn. 100 (1871), Ward & Briggs
had a contract with the state for the lease of prisoners. Within a
few weeks the governor pardoned 353 convicts and the lessees
sought to hold the state responsible for the loss they sustained
thereby. It was held that the power to pardon was in the governor
and that the state did not guarantee the fidelity of its officers, and
the claim was denied. In *State v. Dalton,* 109 Tenn. 544 (1902),
it was held that the power to grant reprieves and pardons is by the
constitution vested solely in the governor, and that the general as-
sembly cannot directly or indirectly take it from his control and
vest it in other authority.

The Texas constitution of 1845 gave the governor power to grant
reprieves and pardons after convictions in cases other than treason
and impeachment, and "under such rules as the legislature may pre-
scribe, he shall have power to remit fines and forfeitures." The
legislature could pardon for treason. In *Ex parte Sparks,* 234 S.
W. 393 (Tenn. 1921), a proclamation issued by the governor adopt-
ing the provisions of the parole law and the parole rules of the
prison board was upheld.

Utah constitution of 1895, article 7, § 12: "Until otherwise pro-
vided by law, the governor, justices of the supreme court and at-
torney-general" constitute a pardon board who may remit fines and
forfeitures, commute punishment and grant pardons, after convic-
tion, except for treason and impeachment, "but no fine or forfeiture
shall be remitted and no commutation or pardon granted except
after a full hearing before the board, in open session, after previous
notice of the time and place of such hearing has been given." In
*State v. State Board of Correction,* 16 Utah 478 (1898), a statute in
effect conferring upon the board of corrections power to commute
sentences was held void as in conflict with the constitution, which
creates a board of pardons with the exclusive right to commute
punishments and grant pardons.

The Vermont constitution of 1913 gave the governor power to
grant pardons and remit fines except for treason and impeachment.
The Virginia constitution of 1867 gave the governor power "to remit

fines and penalties in such cases and under such rules and regulations as may be prescribed by law," and except for treason, to grant reprieves and pardons, after conviction. In *Wilkerson v. Allan,* 23 Grat. 10 (1873), the court construed a statute which provides that the governor shall not remit in whole or in part any fine or amercement assessed or imposed by any court of record, and held that the governor had no authority to remit a fine.

The Washington constitution of 1889, article 3, § 9: "The pardoning power shall be vested in the governor, under such regulations and restrictions as may be prescribed by law." Article 3, § 11, provides that the governor shall have power to remit fines and forfeitures under such regulations as may be prescribed by law. In *State, ex rel. Rogers, v. Jenkins,* 20 Wash. 78 (1898), the court held: "The authority to regulate and restrict does not confer the power to abrogate the executive function of pardon." The legislature had created a board of pardons to investigate applications and make recommendations to the governor. It was held that the legislature had not attempted to limit the pardoning power of the governor.

The West Virginia constitution of 1863 gave the governor power to remit fines and penalties in such cases and under regulations as may be prescribed by law, to commute capital punishment, and except for impeachment, to grant reprieves and pardons after conviction, and this was carried into their constitution of 1872. In *State v. Thompson,* 80 W. Va. 698, it was held that in view of the provisions of the constitution the pardoning power could not properly be vested in any tribunal or person other than the governor. It was held that "The legislature no doubt has the power to denominate the cases and prescribe certain regulations for the exercise of the pardoning power by the governor."

The Wyoming constitution of 1889 gives the governor power to remit fines and forfeitures, to grant reprieves, commutations and pardons, after conviction, except for treason and impeachment; but the legislature may by law regulate the manner in which the remission of fines, pardons, commutations and reprieves may be applied for. In *In re Moore,* 4 Wyo. 98 (1892) it was held that statutory provisions regulating applications for pardon and requiring the giving and publication of notice therefor are directory only and apply only to applicants, or those moving in their behalf, and prescribe a method by which they can procure a hearing before the governor, but that they do not limit or impose any restriction upon the author-

ity of the governor to· grant pardons upon his own initiative without any application and without notice. It was said: "The applications are made to him—not by him. . . . Decisions in Indiana (*State v. Dunning*, 9 Ind. 20, 16 Ind. 497), apparently to the contrary, are made under a constitutional provision materially different from ours."

We have summarized the constitutional provisions of the several states and the changes made therein and the decisions of the courts thereon, for the reason that they demonstrate, more forcibly than anything we could say: (1) the purpose of the pardoning power of a government; (2) that in our country it is a power inherent in the people, who may place its exercise in any department or official of the government; (3) that its proper use is beneficial; its improper use is detrimental; and (4) that to avoid its improper use the people may restrict and regulate it by constitutional provision or may by their constitution provide that it may be restricted and regulated from time to time by the legislature. And this is what was done in our state.

We have been prompted to make this summary, because of the argument made on behalf of appellee, and the loose notion which sometimes prevails, that the pardoning power is an executive power, to be exercised by the governor in his discretion, and that no other official or department of the government can interfere with it. But, as has been seen, that is so only when made so by the constitution.

This summary also demonstrates that to understand the decision of any state court upon the exercise of the pardoning power it is necessary to know the constitutional provision of that state at the time the pardon in question was issued.

Without further extending this opinion, already too long, we think it clear that under the constitution of this state the legislature may restrict and regulate the pardoning power of the governor, and that any pardon issued by him, when the restrictions and regulations provided by law have not been complied with, is issued without authority and is void, and that the question whether the pardon has been issued in accordance with the restrictions and regulations provided by law may be inquired into by the court in any cause or proceeding in which it is called to the court's attention.

It necessarily follows that the judgment of the court below must be reversed with directions to deny the writ.