CHANDLER, Justice,
specially concurring:
[T]he [judicial] opinion which gives to the judges the right to decide what laws are constitutional, and what not, not only for themselves in their own sphere of action, but for the legislative and executive also in their spheres, would make the judiciary a despotic branch.
8 Thomas Jefferson, The Writings of Thomas Jefferson 310 (1897).
¶ 72. As Thomas Jefferson understood, each of the three branches of government is entrusted to decide what laws are constitutional for itself in its own respective sphere of action. This means that each branch is charged with interpreting the procedural provisions of the Constitution applicable to that branch. This Court is charged with determining what provisions of the Constitution describe powers that are within the exclusive sphere of each branch. Tuck v. Blackmon, 798 So.2d 402, 405-06 (Miss.2001); Ex Parte Wren, 63 Miss. 512 (1886).
¶ 73. I believe that, under our Constitution, the publication requirements of Article 5, Section 124 are procedural requirements within the executive sphere. They are not a condition precedent to the governor’s power to pardon. As so clearly explained in the majority opinion, our Constitution vests in the governor the exclusive power to review the evidence of publication and determine whether the publication requirements have been met. While this Court may review the face of the pardon to determine whether it erroneously was granted before conviction, and the Senate may invalidate a pardon granted for the crime of treason, the Constitution vests in the executive the power to determine whether the publication requirements have been met. Thus, the executive may determine what duration of publication is required — whether daily or weekly, and whether the contents of a published petition were sufficient. The fundamental purpose of Article 5, Section 124 is to gather information for the governor, who all agree is vested with the sole discretion to decide whether to pardon a certain individual. This Court properly exercises its power of judicial review by declaring this procedural provision to be within the exec *418 utive sphere.[68]
¶ 74. While the dissents argue that Article 5, Section 124 is a reservation by the people of a right to thirty days’ notice, the notion of such a right dissolves when considered in light of the fact that noticing the public has absolutely no impact on the governor’s decision to pardon. All agree that the governor is fully empowered to ignore all protests and grant a pardon in his unfettered discretion.[69] The plain language of Article 5, Section 124 provides no opportunity to be heard and, contrary to the attorney general’s argument, the section creates no due-process right. Akins v. Miss. Dep’t of Revenue, 70 So.3d 204, 208 (Miss.2011) (stating that “[generally, due process requires notice and a meaningful opportunity to be heard”). There is no evidence that the drafters of the Mississippi Constitution of 1890 actually intended for the publication requirements to reserve a right to the people. In fact, the Journal of the Constitutional Convention and newspapers submitted by the attorney general yield only one statement that could be construed as a statement of intent, which is that “if Governors unwisely exercised the pardoning power, it is for want of information which such publications might furnish.” This statement indicates the provision was intended as an information-gathering mechanism for the governor’s benefit.[70]
¶ 75. As indicated in the majority opinion, if this Court were to hold that the governor’s interpretation of the publication requirements of Article 5, Section 124 was subject to judicial review, with our interpretation to apply retroactively, then the Court’s ability to invalidate pardons would extend to every pardon that has ever been issued in this State. Every pardoned individual, living or dead, would be subject to an inquiry into whether the publication requirement, as now defined by this Court, *419 was met. The details surrounding the publication of applications for pardons long thought final would be unearthed and subjected to a lengthy judicial review process. The judicial review process for each pardon would take years, from the initial pleadings filed in the trial court to the final decision of this Court on appeal. The lives of those who have been free for years, many of whom probably have no idea whether they published, or whether their individual publication met this Court’s interpretation of exactly what constitutes sufficient publication, would be cast into uncertainty and disarray.
¶ 76. Under the dissents’ reasoning, every gubernatorial pardon would be subject to judicial review — not just upon the face of the pardon, but upon evidentiary inquiries into whether the publication requirement was met to the satisfaction of this Court. Even the pardon of Randall Kelly Davis, who was pardoned on May 20, 1974, by Governor Waller, would be threatened by judicial review for compliance with the Court’s interpretation of Article 5, Section 124. This is because, while the pardon states that Davis had “complied with the provisions of Section 124, Article 5, Mississippi Constitution of 1890 by publishing his petition for pardon for the time and in the manner provided thereby,” the pardon does not reveal the number of days or weeks the petition was published or the contents of the petition. All Davis’s pardon shows is that Governor Waller believed the publication satisfied Article 5, Section 124. Were this Court empowered to review a pardonee’s compliance with Article 5, Section 124, then this Court would be empowered to review the specifics of Davis’s publication, find that Davis had failed to meet the publication requirements, and invalidate Governor Waller’s pardon of Davis. As the face of Davis’s pardon demonstrates, Governor Waller determined that Davis’s publication was constitutional, and it is not this Court’s role to review this decision.
¶ 77. Our Constitution vests the clemency power in the governor, and the clemency power is a check on the judiciary. The dissents’ argument that the Constitution requires this Court’s interpretation of the publication requirements of Article 5, Section 124 to override the governor’s interpretation would, for all practical purposes, place the clemency power with the judiciary. I believe the majority’s analysis is correct, and I fully concur.
CARLSON AND DICKINSON, P.JJ., AND LAMAR, J., JOIN THIS OPINION.

. The dissenting opinion of my learned colleague, Justice Pierce, relies upon the case of Jamison v. Flanner, 116 Kan. 624, 228 P. 82 (1924), that interpreted Kansas' constitution. I find that case to be inapplicable to the separation-of-powers issue before us. Simply put, unlike our constitution, Kansas’ constitution vests the pardoning power in the governor subject to legislative restrictions. Kan. Const, art. 1, § 7. Accordingly, in Pope v. Wiggins, 220 Miss. 1, 10, 69 So.2d 913, 916 (1954), this Court recognized that Jamison cannot aid our interpretation of Article 5, Section 124, stating that "[Jamison] is not applicable to the question now before us, since there is no provision of our Constitution that authorizes the Legislature to restrict and regulate the pardoning power of the governor.”

. Counsel for Governor Barbour stated at oral argument that Governor Barbour said that no public comment would have changed his decision to pardon the appellants.

. Article 5, Section 124 prescribes a procedure comparable to this Court’s exercise of its constitutional power to promulgate procedural rules governing judicial matters, a power we have held is exclusively within the judicial sphere. State v. Delaney, 52 So.3d 348, 351 (Miss.2011). This Court's procedure is to publish proposed procedural rules in order to solicit public commentary. But this Court is not bound to incorporate suggestions of the public, and in our discretion, we may consider, adopt, or ignore an individual’s suggestion. This publication procedure is an information-gathering mechanism for the Court's own benefit that enables the Court to better exercise its unfettered discretion in adopting procedural rules. No one would argue that our publication of proposed rules for public commentary bestows a due-process right on the public; the public has no opportunity to be heard, although individuals may submit commentary to the Court in hopes of persuasion.
Just as publication of proposed rules assists this Court in the exercise of its core power to promulgate procedural rules, the publication requirements of Article 5, Section 124 assist the governor in the exercise of the core executive power of granting or withholding clemency.